HENRY B. LAWRENCE, Petr. *vs.* HENRY RICHARDS et als.

Kennebec.  Opinion September 12, 1913.

*Discrimination.   Exceptions.   Extensions.   Mandamus.   Peremptory Writ.
Private and Special Laws of 1903, Chapter 82.   Private and Special
Laws of 1905, Chapter 89.   Trustee.   Water Systems.*

1.  Exceptions lie, in matters of law, to the denial of a writ of peremptory
    mandamus.

2.  The charter of the Gardiner Water District provides that "all the affairs
    of said water district shall be managed by a board of trustees composed
    of three members to be chosen by the municipal officers of the city of
    Gardiner;" the trustees are empowered "to issue bonds to an amount
    sufficient to procure funds  .  .  .  for further extensions, additions and
    improvements," and "to establish rates sufficient to provide, among other
    things, for revenue for  .  .  .  such extensions and renewals, as may
    become necessary."  On mandamus to compel an extension, *held:*—

    a.  That the trustees are charged with the performance of all duties which
    the law imposes upon the District, and are vested with the right to exercise
    their discretion in all matters in which the District could exercise its dis-
    cretion.

    b.  That the petitioner, a resident within the limits of the District, has no
    vested legal right to have the District water main extended to his house,
    a distance of about five miles.

    c.  That the trustees, except as far as they are limited by statute, are vested
    with discretionary powers in the matter of extensions of the system, with
    the exercise of which the court cannot interfere.

3.  Mandamus does not lie to compel the performance of acts necessarily
    involving the exercise of judgment and discretion, on the part of the
    officer or board at whose hands performance is desired.

On exceptions by the petitioner.  Exceptions overruled.

This is a petition for mandamus against the defendant as trustees
of the Gardiner Water District wherein the petitioner seeks to com-
pel the defendants to extend the water main of said District to the
petitioner's residence in South Gardiner, and supply him with water.
The cause was heard before a single Justice, who denied the per-
emptory writ, and the petitioner excepted to that ruling.

The case is stated in the opinion.

*Henry H. Sawyer,* for petitioner.

*George W. Heselton, Will C. Atkins, and Hon. William P. White-house,* with them, for respondents.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HANSON, PHIL-BROOK, JJ.

SAVAGE, C. J. This is a mandamus proceeding brought against the defendants as trustees of the Gardiner Water District, wherein it is sought to compel the defendants to extend the water mains of the District to the petitioner's residence in South Gardiner, and supply him with water. The cause was heard before a single Justice who denied the peremptory writ, and it comes before us on exceptions to that ruling.

The defendants, in the first place, interpose the objection that exceptions do not lie, when a peremptory writ of mandamus is denied. And they rely upon the language found in R. S., chap. 104, sects. 17 and 18. Section 17 reads as follows: "A petition for a writ of mandamus may be presented to a justice of the supreme judicial court in any county in term time or vacation, who may, upon notice to all parties, hear and determine the same, or may reserve questions of law arising thereon, upon exceptions or otherwise, for the determination of the full court, which may hear and determine the same as hereinafter provided; but in all cases where exceptions are alleged to any rulings, findings or decrees made upon such petition, the case shall be proceeded with as if no exceptions had been taken, until a decision shall be had and the peremptory writ shall have been ordered, so that the overruling of such exceptions would finally dispose of the case. . . ." In section 18 it is provided that "after judgment and decree that the peremptory writ be granted, the justice of said court before whom the proceedings are pending shall forthwith certify to the chief justice for decision, all exceptions which may be filed and allowed to any rulings, findings or decrees made at any stage of the proceedings." Then follow provisions for the time within which the "excepting party" and the "adverse party" shall file their arguments with the court.

It is true that the language is that the case shall proceed as if no exceptions had been taken until the peremptory writ is ordered, and that there is no literal provision for certifying exceptions to the Chief Justice until after the peremptory writ is granted. But in no other part of either section is there any restriction upon the right of exceptions, or any discrimination between the parties. And the question is, was it the legislative intent that a petitioner should be bound by the decision of the single Justice, in case it was against him, but that the respondents might take exceptions to the decision, in case it was against them? Such a discrimination does not seem consonant with the principles of justice and fair play. And we think the statute should not be so construed as to permit such discrimination, unless the statute read as a whole clearly requires it.

It will be noticed that if the interpretation sought to be put upon the statute is the correct one, a petitioner will never have occasion to reserve exceptions in any case, for if he prevails he will not need them, and if he is defeated he cannot use them. But the language of the statute, aside from the two phrases already quoted, is general. It places no restrictions upon the power of the single Justice to "reserve questions of law upon exceptions" whether he rules for or against the petitioner. Again, if the proposed construction be correct, only a respondent could be an "excepting party" and only a petitioner could be an "adverse party." Yet the statute uses these expressions as general terms, and gives no hint, in this connection, that either party may not be an "excepting party." The very manner in which these terms are used seems to indicate that the legislative thought was that either party might except, in which case the other party would be the "adverse party." We think the legislative intent becomes quite clear when we consider the legislative reason for requiring that when exceptions are reserved the case shall nevertheless proceed, as if exceptions had not been taken, to a final decision. The reason expressed is, "so that the overruling of such exceptions would finally dispose of the case." Mandamus is a direct and forceful process; and in many instances public or private necessity may require a speedy determination of the issues involved. This is recognized in the other provisions of the statute requiring the exceptions to be "forthwith" certified to the Chief Justice, and

limiting the times for argument to short periods. And we think the evident purpose of the clause under discussion was, not to deprive a petitioner of the right of exceptions which the preceding general clause seems to have given him, but to prevent a respondent from delaying the proceeding by interposing interlocutory objections, and carrying exceptions to adverse rulings thereon to the Law Court in advance of a hearing and decision on the merits. Accordingly we are of opinion that the petitioner's exceptions are properly before us for consideration.

The Gardiner Water District is a quasi-municipal corporation, created by chapter 82 of the Private and Special Laws of 1903. It is about six miles long northerly and southerly and about one and five-eighths wide on the average. Territorially it includes only a part of the city of Gardiner, but it does include the village of South Gardiner, in which the petitioner's house is situated. The primary object of the charter was to enable the District to acquire the ownership of the existing water system of the Maine Water Company in Gardiner, Pittston, Randolph and Farmingdale, by condemnation or otherwise. For, although power was granted to it to take and hold water of the Cobbosseecontee river, and to take land for dams, reservoirs and so forth, yet section 13 of the Act provided that this grant of power should be inoperative unless the District should first acquire the plant and franchises of the Maine Water Company. At the time the charter was granted, and at the time the District acquired the plant of the Maine Water Company, its system was extended only through the more congested and thickly settled portions of the city of Gardiner, and not into the outlying parts of the District. The area of service lay mostly within a circle one mile in diameter. It did not then extend to South Gardiner, which is about five miles from the city proper. Nor has it since been extended in the direction of South Gardiner more than a few hundred feet.

The charter of the District provides, in section 5, that "all the affairs of said water district shall be managed by a board of trustees composed of three members to be chosen by the municipal officers of the city of Gardiner." In the original Act, section 9, the District, by its trustees, was authorized to issue bonds to an amount sufficient to procure funds to pay the expenses incurred in the acquisition of

the property of the Maine Water Company, and the purchase thereof, and for further extensions, additions and improvements of said plant. And it was provided, by reference to R. S., 1883, chap. 46, sect. 55, that such bonds should be a legal obligation of the District for the payment of which the property of the inhabitants of the District might be taken on execution. The trustees were empowered to establish rates, section 10, which should at least be sufficient to provide revenue for (1) the payment of current expenses, and for such extensions and renewals as might become necessary; (2) the payment of interest on the indebtedness of the District, and (3) to provide annually an amount equal to four per cent of the indebtedness, to be added to the sinking fund. Any surplus remaining at the end of a year might be paid to the municipalities supplied, in proportion to their respective contributions to the gross earnings.

By chapter 89 of the Private and Special Laws of 1905, the power of the District to issue bonds was limited, so that "when the cost of renewals, extensions, additions or improvements proposed during any one fiscal year of said water district shall be estimated by the trustees at more than ten thousand dollars," the issue of bonds to provide funds for the payment of the same must first be approved by a majority of the legal voters in the district voting at a special election. But when the expense will not exceed $10,000 during the year, the trustees by this Act were authorized to issue bonds to procure funds for making such extensions as may seem necessary to them. In this case the expense of extending the water mains from Gardiner city to South Gardiner is variously estimated at from $45,000 to $70,000. In any event it would be more than $10,000. No issue of bonds for such an extension has been approved by the voters, nor in fact has the question of such an issue been submitted to them.

Before passing to an inquiry into the issues of law involved, we make one further comment upon the powers and duties of the trustees. Neither of the statutes referred to makes any provision for corporate action by the voters themselves, except in the matter of approving or disapproving issues of bonds. There is no provision for meetings of the voters to shape the policy of the District or to give directions to the trustees, nor are the trustees subject to official control by the municipal officers of Gardiner. The District is a sepa-

rate, independent entity, and "all" its affairs are to be managed by the trustees. The trustees are, therefore, for the time being, potentially, the District itself. They have power to do all that the District may lawfully do. They are charged with the performance of all duties which the law imposes upon the District. If the District has the right to use its discretion in any situation, the trustees may exercise that same discretion.

The petitioner alleges that the trustees have neglected and refused to extend the water mains to South Gardiner, and to supply the residents of that village with water for domestic purposes, and the city of Gardiner within the village with water for municipal purposes. And particularly he alleges that they have neglected and refused to supply his residence in South Gardiner with water for domestic purposes, though such service has been demanded. The refusal is admitted. The demand is not questioned.

The respondents, in their return to the alternative writ, set up, in brief, (1) that under the charter of 1903, and the amendment of 1905, the District was not bound to supply all of the inhabitants thereof with water, (2) that the trustees are vested with the right to use their discretion in the matter of extensions, (3) that under the Act of 1905 the right to make extensions according to their discretion was limited to such as should cost not exceeding ten thousand dollars in any one fiscal year, and that an extension to South Gardiner would cost more than that sum, and (4) that they have exercised their discretion wisely.

The petitioner, under his answer to the return, contends (1) that it is the legal duty of the District to supply him with water (2) that the trustees are not vested with any discretion in the matter, and (3) that chapter 89 of the Private and Special Laws of 1905, which purports to limit the powers of the trustees to issue bonds for extensions and thus practically prevents extensions which will cost more than $10,000, unless the bond issue to provide funds for the same is approved by the voters, is unconstitutional and void, in that it impairs the obligation of a contract. And thus arise the issues to be determined.

It is well settled that mandamus does not lie to compel the performance of acts necessarily involving the exercise of judgment and discretion on the part of the officer, board or commission at

whose hands performance is desired. The court may under proper circumstances require an inferior tribunal to exercise its discretion, but not prescribe how it shall exercise it. The domain of discretionary powers conferred upon municipal bodies will in no case be invaded by the court. The court cannot substitute its own judgment for that of the tribunal to which it was committed by law. *Bangor v. County Commissioners*, 87 Maine, 294; Spelling on Extraordinary Remedies, sections 687, 1384. This principle is admitted in argument by the petitioner.

But the petitioner contends that the trustees have no discretion in the matter, and that, by force of the original Act of 1903, he has a clear, legal and vested right, even a contract right, to have water supplied at his house,—a right which the Legislature could not impair by the amendment of 1905. He bases his contention on the ground that the District is bound to supply every inhabitant of the District with water. If this contention has real merit, the consequence is that the trustees, acting for the District, are legally bound to supply water to all inhabitants, no matter how large the cost of the undertaking, nor how small the revenue, and no matter how ruinous and destructive the result might be to the financial ability of the District to carry on its operations. That this contention is not sound is, we think, easily demonstrable. The area of the District outside of the city proper and South Gardiner is scatteringly settled. The elevation in some places is considerably higher than the system's reservoir. It does not need the testimony of expert engineers to satisfy a reasoning mind that under such conditions the expense necessarily to be incurred in performing the duty, as it is claimed to be, of supplying every inhabitant of the District with water would practically be destructive of the purposes of the charter. It would create a burden too heavy to be borne. Did the Legislature contemplate and intend such a possible result? Did the Legislature intend, when it empowered the cities of Lewiston and Bangor to own their water systems, with powers and duties with respect to the water supply similar to those of the Gardiner Water District, that those cities were bound to furnish water over the entire extent of their territorial areas? We do not think so. It is a matter of common knowledge that water systems in towns or cities containing both an urban and a rural population, whether the systems be owned

privately or municipally, never have been in fact, and are not now, anywhere, extended beyond the more compact parts of the town into and through the rural parts. It is practicable in the rural parts for inhabitants to supply themselves. In the thickly settled parts it gradually becomes inconvenient, impracticable and sometimes impossible for the inhabitants to do so. Sources of supply become exhausted or defiled, and the need for more water, which the inhabitant cannot well furnish for himself, becomes imperative. Organized action, either public or private, becomes necessary, and the individual then pays for a service which he can no longer perform for himself.

We think then there was nothing in the situation existing in Gardiner which gives color to the contention that the Legislature intended the District to be bound to supply all the inhabitants within its limits with water, or to operate and extend the system beyond the ordinary limits to which similar systems are operated and extended. The system which the District was authorized to acquire was limited in Gardiner in fact to the urban portion of the city. This system the trustees were empowered to extend and improve, but we do not think that the statute thereby required them to extend to all parts of the District, to the parts which did not need the water as well as to those which did; even, if the petitioner's theory is correct, to extend to the individual who might reside in the remotest rural portion of the town, if he demanded it. To place such a construction upon the statute, which alone imposed duties upon the trustees, seems unreasonable, and there is nothing in the language of the statute which requires such a construction. In fact there is an implication otherwise in the statute. By section 10, it was provided that the water rates established by the trustees should be such as to provide revenue . . . "for such extensions and renewals as *may become necessary.*" This clearly does not mean extensions all over the District.

We think then that the contention that as a matter of law every individual in the District has the right to have the water brought to him cannot be sustained. But if the District is not in law bound to supply all, who is to determine to what extent the system shall be extended, and who shall thereby be supplied? The power to do this must necessarily be vested in the trustees. It is not given to

any other person or body. In making the determination, they must use their judgment and exercise their discretion, and the exercise of that discretion is not reviewable on mandamus.

It is true that the situation of the petitioner in the village of South Gardiner may not be the same as that of the farmer in the rural part of the town with his spring, or well, or brook. But once grant, as we must, that the trustees are vested with a discretion not to extend to every part of the District, it follows that some power must decide the limits of extension. There is no dividing line in the exercise of the discretion. There is no ground for saying that the trustees have discretion as to part of the District, and have none as to another part. They must have discretion as to all extensions or none. If they abuse their discretion, the remedy does not lie in the power of the court, but in the wisdom of the Legislature.

It follows from what we have said that the petitioner has no vested legal right, whether it be in the nature of contract or otherwise, to have the District's water main extended to his house. His only legal right is that the trustees shall exercise their discretion. That they have done, adversely to the petitioner.

It is proper to say that the case of *Robbins* v. *Railway Co.,* 100 Maine, 496, on which the petitioner strongly relies, is easily distinguishable from this case. There the main was already extended by the petitioner's house, and mandamus was granted to compel the defendant to permit water to be conducted from the main to the house. There was no question of extending a main, nor was the defendant in that case vested with any such discretion as we think these defendants are. The court in that case held that a public service corporation was bound to serve all impartially, fairly and without discrimination, but it did not hold that such a corporation authorized to supply water to the public was bound at all hazards, without regard to expense or revenue, or the exercise of good business judgment, to extend its mains to every individual of the public who might demand it. But what the duties of a public service corporation may be in a particular case are not involved in this case, and we do not need to consider them now.

It is unnecessary to consider the other questions raised. Our conclusion is that the Gardiner Water District is a municipal corporation created for a special purpose, that its trustees are vested

with discretionary powers in the matter of extensions of the system, and that the court cannot interfere with the exercise of their discretion.

*Exceptions overruled.*