## Lew Kedroff et al v. Town of Springfield, Vermont and Selectmen

[ 256 A.2d 457 ]

February Term, 1969

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed July 15, 1969

*Black & Plante* for the Plaintiffs.

*Parker & Richards* for the Defendants.

**Shangraw, J.** This is a petition brought to the Court of Chancery, Windsor County. The plaintiffs seek a declaratory judgment construing the provisions of paragraph nine (Residence A District) of the zoning ordinance of the Town of Springfield, Vermont, as adopted at the 1956 March town meeting.

The overall issue presented in the petition is whether or not the Town of Springfield, is itself, subject to the provisions of this zoning ordinance and, as such, prohibited from erecting and maintaining a sewage disposal plant within Residence A District.

Defendant filed an answer. An agreed Statement of Fact, and the addendum thereto, were filed by the parties. This was followed by the Chancellor's findings predicated thereon.

A decree was issued, which, so far as here material, reads:

"1. In the construction and operation of the sewerage disposal plant the Town of Springfield, a municipal corporation, is carrying on a governmental function and is not subject to zoning restrictions in its use of its property for that purpose.

2. The sewerage disposal plant is located in the Town of Spring-- field in an area zoned as a "Residence A District" wherein one of the permitted uses is * *

"e. Government Buildings"

3. The prayer of the plaintiffs' petition seeking a declaratory judgment to prohibit the erecting and maintaining of the sewerage disposal plant is denied."

Plaintiffs have appealed to this Court for review.

Among other things, the ordinance provides for three classes of residential districts, two classes of business districts, industrial districts, farming districts, and publicly owned districts.

"Government buildings" are permitted in Resident A Districts, "public buildings" in Publicly Owned Districts, and "municipal buildings" in Business B Districts. The ordinance does not specifically refer to a sewerage disposal treatment plant, as such, nor does it define the words governmental, public, or municipal buildings.

At a special town meeting duly warned and held on September 19, 1967 it was voted to construct a sewerage treatment plant on the so-called "Day Land," in Resident A District. A bond issue of $400,000,-.00 was also voted for its contruction.

Among other details, the plant will consist of a control building, so-called, together with sludge drying beds and a settling tank. Sewer rates for Springfield residents will be increased to assist in the amortization of the bond issue.

Under date of December 8, 1967, the Department of Water Resources of the State of Vermont, gave approval of the planned disposal plant. On December 29, 1967, this department, by letter, also gave interim approval and tentative allotments for its construction.

The Town of Springfield took title to the Day land by deed dated January 15, 1968.

On February 27, 1968 the selectmen authorized the town manager to recommend to the State of Vermont the low bidders for the award

of contracts relating to the construction of the plant, which bids had been received on February 20, 1968.

By letter dated March 8, 1968, the United States Federal Water Pollution Control Administration advised that all of the conditions and assurances needed to meet prior authorization having been fulfilled, the Town of Springfield was authorized to award the contract or contracts for the plant's construction.

Contracts for the construction of the plant were awarded. We are advised by counsel that the plant is nearly completed.

By virtue of 10 V.S.A. §571, it is the declared policy of this State "* * * that the water resources of the state shall be protected, regulated and, where necessary, controlled under authority of the state in the public interest and to promote the general welfare; * * *" The Vermont state water conservation board, consisting of three members was established for this purpose. 10 V.S.A. §573. By No. 100 of the acts of 1961 this board was renamed the Vermont Water Resources Board. By subsequent amendment to §571 an overall state agency was created known as the Department of Water Resources which, along other state agencies, included the Vermont Water Resources Board.

10 V.S.A. §575 defines the duties of the Vermont Water Resources Board. Under section (a), subsection (7) it is therein provided that the board shall "Encourage the construction of sewage disposal plants by municipalities; and encourage the construction of septic tanks and other proper methods of waste and sewage disposal in rural and industrial areas; * * *"

Thus, the State of Vermont, by its declared legislative policy to eliminate water pollution, is vitally interested in any plant, such as a sewage plant, which will purify its effluent before discharge into any waters of the State.

Under Chapter 33 entitled "Water Pollution Control" §§901 and 918 are further declaratory of this purpose, with special reference to water pollution control. Under this chapter, the Vermont Water Resources Board is empowered to classify rivers and other bodies of water and to maintain them at designated levels of purity in implementing the control and elimination of water pollution in the State.

Moreover, the New England Interstate Water Pollution Control Commission has for its object the abatement of existing pollution and control of future pollution in the interstate waters of the New England

Area. 10 V.S.A. §§991-1002. To this end, the Governor of Vermont is authorized and directed to execute a compact with any of the New England States, or the State of New York legally joined therein. The concept of minimizing water pollution is sponsored by the federal government and is nationwide.

We refer to the definition of water pollution as contained in 10 V.S.A. §901, subsection (c).

"Pollution" means the placing in the waters of the state by whatever means any noxious or deleterious substance which is likely to create a nuisance, or renders such waters harmful to animal or aquatic life, or to use for domestic, commercial or industrial purposes or for recreation.

Under §901, *supra,* subsection (d) "Waters" shall include all rivers, streams, creeks, brooks, reservoirs, ponds, lakes, springs, and all bodies of surface water, artificial or natural, within the boundaries of the state. Under 10 V.S.A. §902 there are four classifications of state waters—A to D inclusive.

Class C waters are defined as "Suitable for recreational boating, irrigation of crops not used for consumption without cooking; habitat for wild life and for common food and game fishes indigenous to the region; and such industrial uses as are consistent with other class 'C' uses."

Following statutory notice and public hearing, the Vermont Water Resources Board, by its order dated March 30, 1966, classified the Black River in the Springfield area leading to the Connecticut River as Class "C" and ordered that all pollution inconsistent with the above classification be abated. The board determined that to improve the present conditions, it would be necessary to provide individual septic tanks and leaching lines or leaching pits for domestic sewage treatment from all sources in the Black River watershed, except where municipalities elect to follow municipal treatment or where municipal collection and treatment facilities have been formally planned or already constructed. We take judicial notice of this order. *Smith* v. *Highway Board, et als,* 117 Vt. 343, 347, 91 A.2d 805.

The Springfield sewerage disposal system is designed to abate the pollution of Black River occurring from the municipal outfalls to the north end of the community of Springfield. To abate this pollution under the order of the Vermont Water Resources Board. it was

necessary for Springfield to adopt either the individual approach with septic tanks and subsurface leaching, or the municipal approach by the construction of the necessary collection and treatment facilities. The Town of Springfield elected, with the approval of the .Vermont Water Resources Board, to overcome the water pollution problem by the construction of a sewerage disposal plant.

 Under present conditions, the continued well-being and health of a community and its inhabitants, as well as statewide, demands that sewage be properly disposed of. This creates a duty on an individual, partnership, public or private corporation, municipality, institution, or agency of the state. 10 V.S.A. §901 (b).

In the Special Session of 1964 the legislature by Public Act No. 37 further recognized the statewide importance of the control, prevention, and abatement of water pollution, by granting to the Vermont Water Resources Board additional authority to this end. The above Act in part states:

It is the purpose of this act to amend the Vermont statutes annotated pertaining to water resources by further classifying the waters of Vermont to protect, maintain and improve the quality and quantity of the waters of Vermont for water supplies, the propagation of wildlife, fish and aquatic life, asthetic value and for domestic, agricultural, industrial, commercial, recreational and other legitimate uses; to provide that no waste be discharged into the waters of the state without first being treated to such degree as to protect all legitimate beneficial values and uses of such waters; to provide for the prevention, abatement and control of new or existing practices harmful to water quality; and to clarify and expand the duties of the Vermont water resources board so as to make these objectives more susceptible of accomplishment.

Thus, the Vermont Water Resources Board has a legislative mandate and authority to minimize water pollution in all waters located in the State of Vermont.

Appellant urges that the Town of Springfield, by its construction of the sewerage disposal plant, was acting in a proprietary capacity, not governmental, and that the local zoning ordinance prohibited its construction in Residence District A.

Whether a particular act involves a proprietary or governmental function is a matter not always easy of determination. Under present

conditions, the continued well-being and health of a community and its inhabitants, as well indeed of those in nearby sections demands that sewage be properly disposed of. This creates a duty upon a municipality to assure such action.

Quoting from 37 Am.Jur. Municipal Corporations, §114, pages 727 and 728, "Governmental functions of a municipal corporation are those conferred or imposed upon it as a local agency, to be exercised not only in the interest of its inhabitants, but also in the advancement of the public good or welfare as affecting the public generally." * * * "The distinction between acts in the performance of a governmental function and those in the performance of a corporate or proprietary function is that in the case of the former, the municipal corporation is executing the legislative mandate with respect to the public duty generally, while in the other, it is exercising its private rights as a corporate body."

It accordingly follows that a municipality is not subject to zoning restrictions in the performance of its governmental, as distinguished from its corporate or proprietary activities. *Nehrbas, et al* v. *Incorporated Village of Lloyd Harbor, et al*, 2 N.Y.2d 190, 159 N.Y.S.2d 145, 140 N.E.2d 241, 61 A.L.R.2d 965.

As stated in *Marshall* v. *Town of Brattleboro*, 121 Vt. 417, 422, 160 A.2d 762, "For the purpose of public duties the municipalities are merely convenient instrumentalities of the State * * *." It follows that the water pollution control statutes of this State may be regarded as an amendment to or repeal of a local zoning ordinance which is in conflict with the operation of those statutes. See 58 Am.Jur. Zoning, §120; *Less* v. *Sampson Land Co.*, 372 Pa. 126, 92 A.2d 692, 40 A.L.R.2d 1171, 1176.

The legislative mandate to the Vermont Water Resources Board relating to the classification of the waters of Vermont and water pollution control, embraces the State as a whole, and is not merely a local concern. To this end, we have an overall state policy and statutory authority for its accomplishment. Being statewide in its scope, the construction of the sewerage disposal plant in the Town of Springfield must be stamped a governmental function and is exempt from the local zoning ordinance. This ordinance, as it applies to the plant in question, must yield to the legislative policy and laws of this State.

For the reasons set forth in this opinion, the petition seeking a declaratory judgment to prohibit the erection and maintenance of the sewerage disposal plant must be denied.

*The Chancellor's decree denying the relief prayed for is affirmed.*

NOTE: The case was argued at the February Term, 1969. On order issued by this Court the case was brought forward for further argument at the 1969 June Term.