## Okemo Trailside Condominiums, Inc. v. Charles P. Blais, et al.

[380 A.2d 84]

No. 28-76

Present: **Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.**

Opinion Filed November 2, 1977

*Pope and Pu,* Brattleboro, for Plaintiff.

*Bruce M. Lawlor* of the office of *Douglas Richards,* Springfield, for Town of Ludlow.

**Barney, C.J.** The plaintiff corporation seeks relief in the nature of mandamus to require the Village of Ludlow to accept for connection to the municipal sewage system the sewer lines of the plaintiff's condominium units located in the Town of Ludlow. The lower court refused to grant the desired remedy, and this appeal followed.

Most of the facts are not in dispute. Starting in 1963, the Village of Ludlow started the necessary planning, and followed

through with the necessary voter authorization from the Village, that resulted in the completed construction of an approved sewage waste treatment plant in 1971. The cost of the system was underwritten by Village general obligation bonds and state and federal grants. The cost of maintenance and operation, as well as the debt service payments, all were to come out of sewer charges paid by the users of the system, whether within or without the Village. In 1971 the Village of Ludlow voted the necessary authorizations to allow extension of its sewer lines outside the Village limits. In late 1971, as a result of this authority, the first fifty condominium units of the plaintiff were allowed to be connected to the Village system. A year later the plaintiff proposed to construct an additional one hundred units and connect them to the Village system. It is these condominiums which are the subject of the present suit.

Meanwhile, in April, 1972, the trustees of the Village, who are authorized to act as sewer commissioners, decided not to allow any further connections by prospective users outside the Village. This decision was communicated to the plaintiff, but in its application for a land use permit for the one hundred extra units, the corporation indicated that the sewer connections would be made to the municipal system. This application was returned by the District Environmental Commission because the plaintiff had not obtained permission from the Village to connect to its sewer. The application was amended in 1973 to provide for a private sewage system, called a "spray irrigation" system, and approved. However, the plaintiff continued, right down to the institution of this suit, to seek permission to be tied into the municipal system.

The argument is, in part, phrased in terms of governmental versus proprietary activity of the municipality. This terminology, unfortunately, tends to be more conclusory than analytical. The policy bases for decision making must usually be separately explored before the labels are applied. See *Marshall* v. *Town of Brattleboro,* 121 Vt. 417, 421-26, 160 A.2d 762 (1960).

The principal issue of this case comes down to whether or not there is any legal obligation on a municipally owned sewage system to provide services outside its territorial limits. No one in this case questions the proposition that the municipality, under appropriate circumstances, may elect to provide certain municipal services outside its boundaries. See *Valcour* v. *Village of Morrisville,* 104 Vt. 119, 130-33, 158 A. 83 (1932).

■■ This litigation, however, deals with the question of whether or not, once services are offered outside the municipal limits, such services can be demanded as a matter of law. That is the nature of mandamus; it is a remedy of compulsion. *Rutland Cable T.V., Inc.* v. *City of Rutland,* 121 Vt. 399, 402, 159 A.2d 83 (1960). It does not apply to a case where official action depends upon the application of judgment to a state of facts, making the act discretionary. *Eastern Advertising, Inc.* v. *Cooley,* 126 Vt. 221, 222, 227 A.2d 294 (1967).

■ The plaintiff puts forward the holdings in *Kedroff* v. *Town of Springfield,* 127 Vt. 624, 256 A.2d 457 (1969), and *Corcoran* v. *Village of Bennington,* 128 Vt. 482, 266 A.2d 457 (1970), in support of its claim for service as a matter of right. In addition, it claims that there is such substantial identity between the Town and Village of Ludlow that they may be treated as a single governmental unit.

Taking the last contention first, it seems fitting to point out that purchasers of Ludlow Village bonds might be pleasantly surprised to find them backed by the resources of the whole Town of Ludlow. Conversely, the surprise to the Town inhabitants not part of the Village that a Village vote had rested a bond issue in part upon their real estate could only be unpleasant. We are dealing with legal entities here, and under our law they are separate in this kind of context and must be treated so. See 24 V.S.A. § 3613.

The fact that the two governmental units are separate is of importance with reference to the case of *Corcoran* v. *Village of Bennington, supra,* 128 Vt. 482, 266 A.2d 457 (1970). In that case an inhabitant of the Village was being arbitrarily denied water and sewer in order to implement a Village policy against trailer parks. As a Village resident, he stood in a compelling position with respect to the furnishing of services to him by that very governmental unit, subject only to conditions appropriate and uniformly applicable to residents in comparable situations. This plaintiff stands only in the position of a prospective contractor for services which, in the judgment of the sewer commissioners, can be treated as excess capacity without compromising their responsibility to furnish adequate service to the Village.

Nor does *Kedroff* v. *Town of Springfield,* 127 Vt. 624, 256 A.2d 457 (1969) help the plaintiff's case. Just as in the *Corcoran*

case, the controversy was internal, that is, it dealt with the relationship between the municipal authority involved and its residents. The duty to provide a sewage disposal plant, even under the aid and insistence of the State of Vermont, ran only to the inhabitants within the bounds of the governmental unit constructing the plant. That is not this case.

In fact, the proposition which the plaintiff seeks to advance could very well compromise the very responsibilities imposed by both *Corcoran* and *Kedroff*. Overcommitment outside the municipal limits might well impair the performance of the duty to provide service to municipal residents and increase the impact of necessary additional construction on the local zoning law. An extension of service could, under plaintiff's theory, involve a community in providing sewer services for several adjacent communities or beyond.

This would certainly oppressively burden that community and its taxpayers. It is not enough to say that maintenance and debt retirement will come from user fees. The original capital advance here is a bond charge on the constructing community and, until the debt is paid, remains so. If user fees fail, recourse will fall back upon the community.

Since there is a duty on the sewer commissioners to decide the measure of the excess capacity of the system, and how much, if any, can safely be contracted away, this is the classic situation where mandamus will not lie. *Bloomer* v. *Cheney*, 131 Vt. 552, 553, 311 A.2d 101 (1973).

The plaintiff advances arguments based on the alleged availability of gallons of excess capacity. The present existence of that capacity, whatever its measure, does not compel its allocation to possible users outside the Village. It is a matter within the proper discretionary authority of the sewer commissioners, who must, in permitting any outside connection, have in mind its possible impact upon the ability of the system to fully serve its proper constituents for the period for which it was designed. Any errors the lower court may have made in its computations do not alter this duty, and this Court, on the showing before it, will not interfere in its proper exercise.

*Judgment affirmed.*