## Thomas W. Bryant and John P. Skinner v. Town of Essex

[564 A.2d 1052]

No. 87-030

Present: Allen, C.J., Peck, Gibson and Mahady, JJ., and Keyser, J. (Ret.), Specially Assigned

Opinion Filed June 23, 1989

30

*Robert P. Davison, Jr., P.C.*, Stowe, for Plaintiffs-Appellants.

*Perry & Schmucker*, South Burlington, for Defendants-Appellees.

**Allen, C.J.** Plaintiffs brought this action to compel the Town of Essex and its manager to allocate 144 sewer units to their planned single-family subdivision, "Essex Meadows," to enjoin the Town from allocating sewer units to two competing residential projects, and to declare the Town's Sewer Allocation Policy to be void. The case was heard on an agreed set of facts, plaintiffs were denied relief, and they appeal from the trial court's order. We affirm the denial of the requested relief.

The trial court found that rapid development in Essex and the surrounding area in recent years had severely strained the capacity of then-existing sewage disposal facilities. To alleviate the situation, Essex and two of its neighboring municipalities obtained federal funding for a new sewage disposal and treatment system, the additional capacity of which was divided among the three municipalities. Essex acquired a treatment capacity of 1,000,000 gallons per day (g.p.d.).

The Agency of Environmental Conservation determined that, with full utilization of the new system by all three towns, the Winooski River, at the place of discharge, would be at its "assimilative capacity." A costly tertiary treatment system

would have to be added to further increase sewage disposal capacity. Without such an additional system, the facility as now constructed would define the limits of available sewage removal for Essex for the foreseeable future.

As a prerequisite to receiving federal funds, Essex was required to analyze the project's effects on population density, on patterns of land use and on increased growth at a faster rate than that planned by the existing community, and to identify techniques for mitigating adverse effects through phasing of sewer use. After conducting the required analysis, Essex incorporated its findings into a Sewer Allocation Policy ("the Policy"), directed at allocating use of the new resource over a twenty-year period, which was adopted by the Board of Selectmen on March 1, 1985.

The stated purposes of the Policy are to provide an orderly, planned rate of demand increase during the twenty-year life of the system providing for future needs and modifications, to preclude acquiring or hoarding of sewer allocations to enhance property values, and to preclude tangential spurs of development away from the primary sewer core area resulting in unusual demands on the sewer system, pumps, storage wells and other mechanisms. The parties agreed at trial that the Policy is, and is intended to be, an instrument for the control of growth and population densities in the sewer core area of Essex.

The Policy first estimates existing initial use at 240,000 g.p.d., and sets aside an additional 235,000 g.p.d. to serve existing structures located in the sewer core area but not initially connected to the sewer system. The remaining capacity (525,000 g.p.d.) is preserved for future development within the sewer core area, as the Policy precludes extensions of the sewer system beyond the sewer core area. The Policy divides the capacity reserved for future development into twenty equal parts to be phased into use at a rate of one part per year over the twenty-year period after its enactment. The Policy contemplates that the town administration will provide sewer allocations through the usual permit process, and will advise the Planning Commission of sewer availability so that it may perform its function of phasing in new construction.

The Policy requires that sixty percent of the capacity reserved for future growth be used only for commercial/industrial projects or housing for senior citizens. The remaining forty percent is reserved for residential growth and is further allocated by geographic area. The Policy provides that allocations will be withdrawn, for reallocation, from projects which are not commenced within two years of receiving their initial allocation.

The dispute reflected in this case arose due to the way in which sewer capacity was allocated to three competing residential projects within the sewer core area of the Town of Essex, one of which was plaintiffs' proposed 144-lot single-family residential subdivision known as "Essex Meadows." The other two projects were a multi-family condominium project developed by Ann Harroun and Daniel Close known as "Old Stage Village" and a single-family residential subdivision project developed by Forestdale Heights, Inc. and North Country Builders known as "Forestdale Heights."

The Forestdale Heights project had been granted permission to carryover some unused but already allocated sewer units in 1985. In April, 1986, the Policy was revised to preclude this sort of carryover or stockpiling of allocated units, but the amendment was not applied retroactively to the Forestdale Heights project.

On May 19, 1986, the Board of Selectmen sitting as a Zoning Board of Adjustment gave the Harroun/Close project "conditional use approval" as a planned residential development. The Harroun/Close project applied for allocation of ninety multi-family sewer units on May 28, 1986. At the May 29, 1986 meeting of the Town of Essex Planning Commission, plaintiffs were granted "sketch plan approval," which is a prerequisite under the terms of the Policy for applying for sewer unit allocations. A project such as the Harroun/Close project, which does not involve the subdivision of land into separate lots, does not, under the zoning and subdivision regulations, ever require so-called "sketch plan approval." Plaintiffs applied for 144 single-family sewer units on May 30, 1986.

The Town Manager, pursuant to the Policy, addressed the Harroun/Close application first, because it had come in first, and treated the conditional use approval that project had received from the Zoning Board of Adjustment as the

functional equivalent of the "sketch plan approval" required by the Policy. The Town Manager granted the Harroun/Close project conditional sewer allocation for ninety multi-family sewer units.

On August 14, 1986, the Town Manager wrote to plaintiffs stating that he had "previously advised" them that based on the Policy he did not "anticipate sewer allocations being available for their project prior to July 1, 1989." His report of the same date to the Board of Select⸺en, the Planning Commission and interested parties showed plaintiffs' project to be allocated nine sewer units a year for five successive years beginning in 1989. The record is silent as to any formal or other official action on the part of the Town Manager regarding plaintiffs' application for sewer allocations.

On September 11, 19⸛⸛, plaintiffs commenced the action which is the subject of this appeal, naming as defendants the Town, the Town Manager, and the developers of the two competing projects. The complaint sought an order that the Town and the Town Manager allocate 144 sewer units to plaintiffs' project over a seven-year period, a declaration that the Sewer Allocation Policy is void, an order that defendants be enjoined from allocating the disputed units to the Harroun/ Close or the Forestdale projects, and included a request that the deadline for preliminary approval of plaintiffs' project be extended during the pendency of the action. In October, 1986, based on the agreement of the parties, the trial court dismissed with prejudice the developers of the two other projects.

The trial court rejected plaintiffs' assertion that municipalities in Vermont may use only zoning ordinances to control future growth and density of population, and concluded that the statutory authority of 24 V.S.A. § 4401(b) to regulate density of population and intensity of use did not restrict towns to exercising such control only through zoning. The trial court found the Policy to be within the values and goals of the Vermont Planning and Development Act (VPDA), 24 V.S.A. §§ 4301–4495, and concluded that nothing in the statutory provisions governing the operation of sewers, 24 V.S.A. §§ 3401–3615, invalidates the use of the Policy to control growth. The trial court also concluded that the Policy constitutes neither an impermissible taking of plaintiffs' property nor a denial of plaintiffs' equal protection rights under the state or

federal constitutions, and found that the Town's implementation of it did not amount to discriminatory enforcement.

On appeal, plaintiffs make a variety of arguments in challenging the validity of the sewer allocations at issue in this case. First, plaintiffs argue that the Policy, because it controls "the growth of population densities," is an exercise of zoning power unlawfully bypassing the procedures mandated by 24 V.S.A. ch. 117. They argue that the Policy as applied to them is unconstitutional, first as a "taking" and second as violating the principles of equal protection and due process. They argue that the allocations to the two competing projects were improperly made by the Town Manager rather than by the Board of Selectmen. And finally, they argue that § 416 of the Town of Essex Subdivision Regulations, requiring subdividers to connect to the public sewer system in certain instances, obligates the Town to provide sewage disposal capacity.

## I.

Plaintiffs first argue that the Sewer Allocation Policy is void as an unlawful exercise of zoning power by the Town of Essex. They rely on the stipulated fact that the Policy "is, and is intended to be, an instrument for the control of growth and population densities in the sewer core area of Essex," and point to five characteristics of the Policy which, they argue, amount to the regulation· and control of population density and, therefore, to zoning. These characteristics are the reservation of capacity for existing building expansion without regard to the pace with which it is connected; the allocation of capacity to new commercial/industrial and residential projects in equal annual amounts over a period of twenty years; the allocation of 60% of that capacity to commercial/industrial and senior citizens projects without regard to geographic distribution; the allocation of 40% of that capacity to residential use, with differing allocations in each of eight areas and with the mandate that the ratios of existing housing types be preserved; and the limitation of not more than 25.5% of the residential allocations to multi-family dwellings (the existing percentage of multi-family residential use). Plaintiffs contend that 24 V.S.A. § 4401(b)(1)(D) provides the sole mechanism by which a municipality may control population density. That section authorizes a municipality to adopt zoning regulations to

"permit, prohibit, restrict, regulate, and determine land development," including "[d]ensity of population and intensity of use." They argue that municipalities are without power to control population density by any other means, including through sewer allocations, and that the use of such power cannot be construed as a necessary incident to any other statutory power.

■ A town may adopt a sewer allocation policy, as one mechanism for controlling growth and population density within the town, under the town's zoning authority. 24 V.S.A. § 4401(b) and 24 V.S.A. §§ 4301-4495. And if the zoning mechanism is used to control growth and density generally, without regard to the administration of the town's sewer and sewage disposal systems, plaintiffs are correct that its enactment must comply with the strict requirements for adoption of zoning regulations, as provided in 24 V.S.A. §§ 4403-4404. It is possible that such growth and population density controls as are expressed in the Policy could also have been properly adopted in the town's planning and zoning scheme. But we need not reach that question because those controls in the Policy are directed to the administration of the Town's sewer and sewage disposal system.

The Town is empowered to construct and operate sewer systems and sewage disposal systems. These actions are authorized by a different statute, with different procedural requirements. In the Board of Selectmen's capacity as a board of sewer commissioners and a board of sewage disposal commissioners, 24 V.S.A. §§ 3401-3508 and §§ 3601-3618, they are charged with the responsibility, among other things, to "construct, maintain, operate and repair" sewer systems and sewage disposal facilities.

■■ The Policy was stipulated to be an instrument to control population density and growth specifically with regard to the sewer core area, that is with regard to the load on the sewer and sewage disposal system which the selectmen are charged with managing. To the extent that the population density and growth controlled by the Policy are related to the load on the sewer and sewage disposal system, the Town may allocate capacity of that system through the Policy, as a power incidental to managing the sewage system. Municipalities

possess and may exercise not only those powers expressly granted to them by the Legislature, but also "such powers as are necessarily and fairly implied in or are incident to the powers expressly granted, and such as are essential to the declared objects and purposes of the [municipal] corporation." *Burlington Fire Fighters' Association v. City of Burlington*, 149 Vt. 293, 295, 543 A.2d 686, 688 (1988) (power to enact retroactive provisions to pension ordinance implied from express power to adopt firefighter pensions); *Town of Brattleboro v. Nowicki*, 119 Vt. 18, 19–20, 117 A.2d 258, 260 (1955) (power to require inspection of taxis implied from express power to, among other things, license, regulate and control their owners or drivers); see also *Hinesburg Sand & Gravel v. Town of Hinesburg*, 135 Vt. 484, 485–86, 380 A.2d 64, 66 (1977) (power to sell large quantities of excess sand and gravel produced at town-owned pit held not incidental to express authority to maintain highways).

To the extent a policy such as the one at issue here controls land use alone—that is, not by how much sewer capacity is used nor when it is used, but by type of land use—it must be reflected in the duly adopted town plan and zoning or subdivision regulations to survive a challenge that it is an impermissible attempt at zoning, lacking the procedural controls inherent in the zoning law. Plaintiffs may mean to suggest, by their mention of the portions of the Town of Essex Policy that allocate sewer units by housing type (e.g., limitation on percentage of housing in multi-family units, preference for senior citizen housing), that the Policy suffers this infirmity, but they do not make this argument. And, as the trial court noted, plaintiffs did not claim or prove that the portions of the Policy intended to insure housing diversity in the community had not also been properly adopted through the planning and zoning statute. Thus, we do not reach the validity of the Policy in the manner in which it imposes restrictions on housing type.

## II.

■ Plaintiffs argue briefly that the Policy as applied to them is an unconstitutional taking. The only factual basis they assert for this argument is found in the stipulated facts that plaintiffs' project will not be "economically viable" or

"commercially viable" if awarded only the forty-five alloca-
tions commencing in 1989. Plaintiffs have failed to present
evidence of what economically viable use they may be able to
make of their property; they have only presented factual
support that the particular project they had planned would not
be viable. They therefore have not provided a basis for the
Court to find an unconstitutional taking under any taking
analysis either under the recent series of United States
Supreme Court cases on that subject: *Nollan v. California
Coastal Comm'n*, 483 U.S. 825 (1987); *First English Evangel-
ical Lutheran Church v. County of Los Angeles*, 482 U.S. 304
(1987); *Hodel v. Irving*, 481 U.S. 704 (1987); *Keystone
Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987);
or under Vermont law. *State v. Sanguinetti*, 141 Vt. 349, 449
A.2d 922 (1982).

## III.

■■ Plaintiffs next argue that the Policy as applied to
them violates principles of equal protection and due process.
First, we note that the provision of sewage disposal does not
implicate a fundamental right. *Fyles v. Schmidt*, 141 Vt. 419,
423, 449 A.2d 962, 965 (1982). The trial court observed that
the classifications challenged here by plaintiffs produce
inequalities, but concluded, as we must conclude, that
plaintiffs did not provide a factual basis to meet their high
burden of showing a violation. They have not shown that the
classifications failed to rest on a rational basis serving a
legitimate public policy objective, a showing required both
under Vermont law, *State v. Ludlow Supermarkets, Inc.*, 141
Vt. 261, 267, 448 A.2d 791, 794 (1982), and federal law. See
*McGowan v. Maryland*, 366 U.S. 420, 425–26 (1961).

## IV.

■ Plaintiffs next argue that the allocations to the two
competing projects were improperly made by the Town
Manager rather than by the Board of Selectmen. But the
statute allowing towns to hire town managers specifically
provides that the town manager has not only the authority but
the duty to have "charge, supervision and control" of the

sewage system (except for sewage assessments). 24 V.S.A. § 1236(9)(D).

## V.

■ Plaintiffs then claim that the Town is obligated to provide sewage disposal capacity to developers, by virtue of § 416 of its subdivision regulations. That section, however, only requires subdividers to hook up to the sewer system if it is "reasonably accessible or when required in the interest of public health or safety." Neither that section nor the cases cited by plaintiffs require the Town to provide unlimited capacity. In *Okemo Trailside Condominiums v. Blais*, 135 Vt. 500, 503, 380 A.2d 84, 87 (1977), the extension of sewer service beyond village limits was held to be discretionary. Neither *Corcoran v. Village of Bennington*, 128 Vt. 482, 490, 266 A.2d 457, 463 (1970), nor *Kedroff v. Town of Springfield*, 127 Vt. 624, 627–28, 256 A.2d 457, 460 (1969), established an absolute obligation on the part of a municipality to provide sewage disposal services on demand. In *Corcoran*, this Court required only that plaintiffs be subject to the same terms and conditions for water and sewer services as any other applicants, 128 Vt. at 491, 266 A.2d at 464, while *Kedroff* held that when a municipality builds a sewage treatment plant, it is not itself subject to zoning restrictions in the location of such a facility. 127 Vt. at 629, 256 A.2d at 461.

## VI.

■ We now turn to the remedies sought by plaintiffs. First, to the extent that the trial court in its opinion issued a declaratory judgment that the Policy is not invalid due to its controls on population density and growth, we affirm that judgment. Even if this Court were to have ruled the Policy in part invalid, the appropriate remedy would not have been for this Court to rewrite the Policy, as that is a legislative rather than a judicial function, but to remand to the Town for enactment of an amendment to the Policy (or its adoption as a zoning ordinance). See *G.S.T. v. City of Avon Lake*, 59 Ohio App. 2d 84, 86–87, 392 N.E.2d 901, 903–04 (1978); 4 R. Anderson, American Law of Zoning 3d § 30.16 (1986).

The second remedy sought by plaintiffs was an injunction against the allocation of the sewer units in question to the two competing projects. Because we have not found the Policy to be invalid, we need not address the effect of the dismissal of the developers of the two competing projects on the availability of this remedy.

■ ■ The remaining remedy plaintiffs seek is that of mandamus against the Town. But even had we determined that the Policy was in part invalid, it would not necessarily follow that plaintiffs would be entitled to relief in the nature of mandamus. The wording of 24 V.S.A. §§ 3502 and 3602 make clear that the construction and operation of a sewage plant and system is discretionary with the town. The decision to extend the system is likewise discretionary, and that decision remains with local government. It has long been recognized that mandamus will not lie to compel the performance of acts necessarily involving the exercise of judgment and discretion on the part of the officer or board from whom performance is sought. *Lawrence v. Richards*, 111 Me. 95, 100–01, 88 A. 92, 94 (1913) (mandamus would not lie to compel water district trustees to raise rates or to issue bonds to secure enough money to make an extension of service to petitioner's property); *Garzo v. Stowe Board of Adjustment*, 144 Vt. 298, 300, 476 A.2d 125, 126 (1984) (axiomatic that mandamus will lie only for the enforcement of official ministerial duties and not for the review of acts which involve the exercise of discretion or judgment); *Okemo Trailside Condominiums*, 135 Vt. at 502, 380 A.2d at 86 (mandamus does not apply to extension of sewer system beyond limits of village).

■ Here, adoption of the Policy, including the way in which it sets priorities among competing applicants, was a municipal act involving judgment and discretion for which relief in the nature of mandamus is unavailable. This Court's decision in *Corcoran*, 128 Vt. at 490, 266 A.2d at 463, does not dictate a contrary result. In that case, village officials attempted to achieve the goals of an invalid zoning ordinance by withholding action on requested sewer hookups to an existing sewer line, and mandamus was applied to require them to act. In the present case, though the application of the Policy to plaintiffs by the Town Manager may be non-

discretionary, there is no allegation that the Town Manager has refused or withheld his authority to apply the Policy to plaintiffs' application.

 Nor is it determinative that plant capacity capable of accommodating plaintiffs' project is in existence at the present time. The Town is at liberty to impose reasonable and relevant conditions of general applicability relating to the use of that capacity, including the right to allocate that capacity over a period of time and to particular geographic areas. *Okemo Trailside Condominiums*, 135 Vt. at 503, 380 A.2d at 87. While the Town may not use its sewer system management authority for the purpose of regulating growth or population density or housing type generally and without regard to the capacity of the sewer system, this Court will not issue a mandate that overrides the exercise of a town's rights to allocate scarce municipal resources.

*Affirmed.*