## BRENNAN WOODS LIMITED PARTNERSHIP v. TOWN OF WILLISTON

[782 A.2d 1230]

No. 00-240

September 26, 2001. The Town of Williston appeals the summary judgment decision in favor of plaintiff Brennan Woods Limited Partnership and grant of mandamus compelling the Town to allocate sewage disposal capacity to plaintiff's project under the phasing schedule

imposed by plaintiff's Act 250 permit. The Town contends: (1) the Town select board acted within its discretion under the 1990 sewer allocation ordinance in imposing phasing requirements to regulate growth in accordance with its Municipal Comprehensive Plan; (2) the board is not bound by the decision of the environmental court or Act 250 permit regarding the phasing schedule for the Brennan Woods project; and (3) mandamus is not a proper remedy in light of the board's discretion. We affirm.

The following facts are not in dispute. Plaintiff's predecessor filed a subdivision application on May 19, 1994[1] with the town planning commission to build 174 residential units on a 189-acre parcel on Mountain View Road, in Williston, Vermont. On March 27, 1995, plaintiff's predecessor applied for a sewer allocation of 39,150 gallons per day (gpd) to cover the entire project. On July 27, 1995, the board granted a partial sewer service allocation of 3,600 gpd for the project to serve the initial fifteen homes in the development. In May 1996, the town planning commission granted subdivision approval for the project, but imposed a phasing requirement limiting construction to fifteen homes a year and delayed construction of more houses until July 1998. Plaintiff's predecessor appealed to the environmental court.

The issue before the environmental court was whether the planning commission was authorized to impose a phasing limitation on the project. The court reviewed the zoning ordinance which requires the planning commission to prepare a residential phasing policy to implement the Williston Comprehensive Plan and zoning ordinance. The court found that this provision of the zoning ordinance lacked any safeguards or standards to which the planning commission must adhere when creating its phasing policy. Accordingly, the court held that the zoning ordinance was an impermissible delegation of authority to the planning commission, and that, therefore, the planning commission lacked the authority to impose the phasing requirement. *In re Snyder Group Inc.*, No.E 96-099, slip op. at 2 (Vt. Env. Ct. June 19, 1997). The Town did not appeal the decision of the environmental court.

In September 1996, plaintiff's predecessor applied for an Act 250 permit. The Town provided comment to the District 4 Coordinator about the project. Regarding sewer and water, the Town represented the following:

> The Williston Selectboard granted a municipal sewer allocation on July 27, 1995 to serve the initial 15 dwelling units of this development. The balance of the sewer allocation must be made at a later date. Normally, the Selectboard grants priority, as additional sewer capacity becomes available, to a project that has already received a partial allocation and is under construction. Municipal water service is available to serve the project.

The Town also indicated that the project conforms to its 1995 comprehensive plan. The District 4 Commission ultimately granted a permit to plaintiff that included a phasing plan commencing July 1, 1996, which allows build-out of the project at a rate equivalent to twenty-two housing units per year over a period of eight years. The Town did not appeal the district commission's grant of an Act 250 permit and phasing condition.

On May 28, 1998, the state approved an upgrade to the sewage plant the Town owns with Essex and Essex Junction. The upgrade added 250,000 gpd to the Town's share of uncommitted reserve

---

[1] Plaintiff is the successor in interest to all permits and approvals regarding the project.

capacity. The allocation of sewer service is controlled by the Town sewer allocation ordinance. The ordinance provides a list of allocation priorities under which existing facilities which must be connected, but are not, and emergency pollution abatements are afforded first priority. "Development projects within the sewer service area which has [sic] been granted allocation in prior years will have second priority." On June 18, 1998, responding to the expanded capacity in the tri-town sewage plant, the board adopted attachment A to the sewer allocation ordinance allocating 52,510 gpd to residential projects with existing partial sewer allocations. At that time, plaintiff's project was one of four residential projects with existing partial sewer allocations. On October 27, 1998, the board adopted a resolution to allocate 39,240 gpd [2] to plaintiff subject to the following phasing requirement:

> The allocation for Brennan Woods shall be for 5 single family dwellings and 4 carriage homes (2130 gpd) in year 1998-1999, 15 single family dwellings (3750 gpd) in 1999-2000, 22 single family dwellings (5500 gpd) in year 2000-2001, and a mix of single family dwellings and carriage homes not exceeding 22 units in each subsequent year through 2006-2007 (annual allocations not exceeding 5,500 gpd). Total allocation over the entire development period shall be 39,240 gpd.

Plaintiff appealed the allocation phasing requirement to the superior court pursuant to V.R.C.P. 76. Plaintiff and the

---

[2] There is a discrepancy between the initial allocation number of 37,290 gpd and the final allocation number of 39,240 gpd. The discrepancy is not relevant to any appeal issue.

Town filed motions for summary judgment. Plaintiff argued that the October 1998 resolution was not authorized by the applicable sewer ordinance and that the board failed to carry out its nondiscretionary duty to release committed disposal capacity to Brennan Woods. The court granted summary judgment in favor of plaintiff reasoning that the sewer allocation ordinance did not contain any objective criteria or procedures for independently implementing growth control policies beyond a standard of available sewer capacity, and, therefore, does not authorize the board to impose phasing conditions. The court also held that the phasing schedule imposed by the Act 250 permit had become the only enforceable limitation on the rate at which the project could be built. The Town appeals.

The Town contends it was authorized under the 1990 sewer allocation ordinance to grant plaintiff its sewer allocation subject to the Town-imposed phasing schedule. The Town maintains the phasing schedule imposed by the October 27, 1998 resolution was intended to control the growth and density of the Town's population as directed by the ordinance and comprehensive plan, and was, therefore, authorized. The Town also argues that the court erred in ruling that the only valid phasing requirement was that imposed by the Act 250 permit. Finally, the Town contends that mandamus was an improper remedy.

The superior court's decision with respect to the legality of the phasing requirement rests on two conclusions: (1) the Town had limited power to use the sewer allocation ordinance as a growth-control measure, and its actions went beyond that limited power; and (2) through attachment A, the Town allocated the necessary sewer allocation to plaintiff, and it had no power to undo that allocation in imposing conditions on the permit. We examine the first conclusion in light of the Town's first contention that the sewer allocation ordinance authorized

the board to make sewer allocation decisions and impose conditions based on the goals of the municipal comprehensive plan.

"[A] municipality has only those powers and functions expressly granted to it by the legislature, such additional functions as may be incident, subordinate or necessary to the exercise thereof, and such powers as are essential to the declared objects and purposes of the municipality." *Robes v. Town of Hartford*, 161 Vt. 187, 190, 636 A.2d 342, 345 (1993). The board acting as the board of sewage disposal commissioners is "charged with the responsibility, among other things, to construct, maintain, operate and repair sewer systems and sewage disposal facilities." *Bryant v. Town of Essex*, 152 Vt. 29, 36, 564 A.2d 1052, 1055-56 (1989) (citing 24 V.S.A. §§ 3401-3508 and 3601-3618) (internal quotations omitted). In construing a municipal act, we will resolve all doubts concerning a municipality's authority against the municipality. *Robes*, 161 Vt. at 190, 636 A.2d at 345.

The parties agree that the controlling, applicable law is in *Bryant v. Town of Essex*, but disagree on the force of that decision. *Bryant* held that a town could use a sewer allocation ordinance to control growth generally, but only if it acted under its zoning authority and the policy was adopted under the procedures required to adopt a zoning ordinance. *Bryant*, 152 Vt. at 36, 564 A.2d at 1055. The Town does not claim it adopted its sewer allocation ordinance under procedures applicable to zoning ordinances, so it can not claim this power.

Alternatively, *Bryant* holds that a sewer allocation ordinance can "control population density and growth specifically with regard to the sewer core area, that is with regard to the load on the sewer and sewage disposal system." *Id.* at 36, 564 A.2d at 1056. We held that "[t]o the extent that the population density and growth controlled by the [sewer allocation] Policy are related to the load on the sewer and sewage disposal system, the Town may allocate capacity of that system through the Policy, as a power incidental to managing the sewage system." *Id.* Only where decisions are based on the load to the sewer system, therefore, may the sewer allocation ordinance be used to control population density and growth.

The superior court held that the board was not responding "to the load on the sewer and sewage disposal system" in imposing its phasing schedule. This conclusion is supported by the undisputed facts that the Town had excess capacity as a result of the plant upgrade, it could easily meet all second priority requests before moving on to lower priorities, and the board imposed exactly the same phasing schedule as had been adopted by the planning commission and reversed, as unauthorized, by the environmental court. The superior court's decision is fully consistent with *Bryant*.

In reaching this conclusion, we are not persuaded by the Town's claim that § 4(B)(ii) of the sewer allocation ordinance provides an objective standard for making sewer allocations based on the Town's growth policy. The section provides that "[t]he Board shall designate a portion of said reserve capacity to be available for the fiscal year, may assign specific capacities to zoning districts or user classifications or may establish other conditions for assignment of capacity, which allocations and conditions shall be in accordance with the goals of the Municipal Comprehensive Plan." The superior court construed the language as controlling growth only with respect to available sewage capacity. The alternative interpretation, that the section allows decisions based on growth limits in the town plan, conflicts with *Bryant*'s holding that a sewage allocation ordinance, not issued under the zoning power, can not impose growth limits

except in relation to the load on the sewer and sewage disposal system.

We also reject the Town's attack on the second ground of the superior court decision — that the Town had already allocated the sewage capacity when it imposed the restrictive phasing requirements. The court found that the Town committed to allocating 37,290 gpd to Brennan Woods in attachment A, attached to the minutes of a board meeting. The Town contends that because the Brennan Woods project was not identified in attachment A the attachment cannot serve as a commitment of sewer capacity to Brennan Woods. The internal memorandum containing the recommendation for attachment A belies this claim. The memorandum recommends that the Town "clean-up" all previous commitments before determining how to allocate the available balance. The ordinance required exactly this approach. As recommended, the board allocated 52,510 gpd to this category, a number that can be reached only by including the Brennan Woods allocation. The Town admitted as much in its answer to plaintiff's complaint.

The Town also contends that the June 1995 partial allocation was not a preliminary connection approval so that Brennan Woods was not entitled to a second priority under the sewer allocation ordinance and could not have been part of the four authorized projects in that priority. Again, the court found against the Town on this point, and its holding is supported by the undisputed facts in the record. Under the sewer allocation policy, a preliminary connection approval "shall be a binding commitment of capacity to the project contingent on compliance with any conditions attached to the preliminary approval and the subsequent issuance of a final connection approval." As demonstrated by the Town's representations to the District 4 Commission, the June 1995 partial allocation was a preliminary connection approval. The Town represented to the District 4 Environmental Commission that it had granted a sewer allocation to serve the initial fifteen dwellings of the 174 unit project. The Town conceded that projects that have received a partial allocation receive priority as additional sewer capacity becomes available. The Town also pledged that the balance of the requested allocation must be made at a later date. The only limitation or qualification to the Town's commitment to allocate the necessary sewer connections to the project, therefore, was the availability of additional sewer capacity. This limitation was eliminated with the 1998 tri-town facility upgrade.

We turn now to the Town's argument that the superior court misused the Act 250 permit and the environmental court decision. The Town argues that it is not bound by the phasing schedule imposed by the Act 250 permit because it did not participate or appear at the hearing. Although we disagree with the argument because the Town was a party to the Act 250 proceeding, see 10 V.S.A. § 6085(c)(1), we find it largely irrelevant. The Act 250 phasing schedule controls because the more restrictive schedule imposed by the Town is invalid and not because the Town was a party to the Act 250 proceeding.

Next, the Town argues that the court's reliance on the decision of the environmental court to further buttress its conclusion that the Act 250 permit is the only valid phasing requirement is misplaced. As discussed above, the main significance of the environmental court decision is that it struck down the identical phasing requirements when they were imposed by the planning commission. The superior court's decision does not hold that the environmental court has appellate jurisdiction over actions of the board.

As its third and final main argument, the Town contends that mandamus was improper because the decision to grant a final connection approval for the project

is discretionary under *Bryant*. See *Bryant*, 152 Vt. at 40, 564 A.2d at 1057-58. The requested relief and authority of the board in *Bryant*, however, are distinguishable from the issues in the present action. In *Bryant*, we found that mandamus would be an improper remedy because the decision to extend the sewer system is discretionary under the statutory authority of the town or board to construct and operate a sewage plant and system. *Id.* In contrast, we have held here that controlling growth is not incident to the statutory power of the board to manage the sewer system where growth control is not tied to the load on the sewer capacity. Lacking the authority to control population density and growth in the manner it did, the board's decision to achieve this purpose through implementing phasing conditions is not discretionary.

Where the decision-making is compelled by statute or other authority beyond the board, mandamus is a proper remedy. See *Corcoran v. Village of Bennington*, 128 Vt. 482, 490, 266 A.2d 457, 463 (1970). Here, the sewer allocation ordinance imposed upon the board the duty to issue a final sewer connection approval permit once all conditions of the preliminary connection approval and final connection approval had been met. The only condition suggested by the preliminary connection approval was that the Town obtain additional sewer capacity. That condition was met with the tri-town upgrade. The ordinance outlines three conditions for final connection approval: (1) the applicant must secure applicable local, state and federal permits for the project; (2) all fees related to the connection have been paid; and (3) the plans and specifications for connection to the municipal sewers are approved by the board. Once these conditions have been satisfied, the board "shall issue the final connection approval permit." Plaintiff has obtained all permits and paid all fees. After the sewer up-grade, the additional sewer allocation was approved through attachment A.

All conditions for the final connection approval having been met, plaintiff had a right to final connection approval for the project, and the board had a duty to grant this approval. Mandamus, therefore, was proper. See *id.* at 490, 266 A.2d at 463 (mandamus will lie to compel performance of duty where the right to be enforced becomes certain); *Garzo v. Stowe Bd. of Adjustment*, 144 Vt. 298, 300, 476 A.2d 125, 126 (1984) (mandamus granted where party requesting relief has a clear legal right to the performance of duty and the law affords no other remedy).

*Affirmed.*