## Green Mountain Power Corporation v. Sprint Communications

[779 A.2d 687]

No. 00-155

Present: **Amestoy, C.J., Dooley, Morse and Skoglund, JJ., and Cohen, Supr., J.,
Specially Assigned**

Opinion Filed August 17, 2001

*David John Mullett*, Montpelier, for Appellant.

*Harriet Ann King* of *King & King*, Waitsfield, for Appellee.

**Amestoy, C.J.** This appeal arises from a determination made by the Vermont Public Service Board pursuant to an assertion of jurisdiction under 30 V.S.A. chapter 86, Underground Utility Damage Prevention System. Respondent Sprint appeals the summary judgment granted by the Board in favor of petitioner Green Mountain Power (GMP), relieving GMP of liability for causing damage to one of its fiber optic cables during an excavation. Because we find that the Legislature did not intend to confer authority on the Board to decide issues of common law negligence arising from excavation activities undertaken pursuant to 30 V.S.A. chapter 86, we reverse.

GMP intended to excavate a site located in White River Junction. Under 30 V.S.A. § 7004, GMP was required to notify the utility companies and allow them forty-eight hours, weekends and holidays excluded, to mark the presence of underground wiring at the site, if any.[1] As required by Public Service Board Rule 3.800, on Thursday, September 5, 1996, GMP notified Dig Safe System, Inc. of the proposed excavation. By Monday morning, September 9, all parties except Sprint had marked the site as required by 30 V.S.A. § 7006.[2] Shortly after 8:00 a.m., the supervisor of the excavation received a phone call that purported to be from a Sprint employee, authorizing GMP to excavate. Sometime between 8:15 and 8:25 a.m., the excavator for GMP struck and damaged a fiber optic cable owned by Sprint. When Saturday and Sunday, September 7 and 8 are excluded, less than 48 hours had elapsed between GMP's notice and the damage to the cable.

GMP filed a petition with the Board requesting a declaratory ruling that it was not liable under 30 V.S.A. chapter 86 for damage to Sprint's fiber optic cable caused by the excavation. GMP also requested that the Board declare that Sprint was subject to the civil penalty provided

---

[1] The statute reads:

> (a) No person or company shall engage in excavation activities, except in an emergency, without first giving notice as required by this section.
>
> (b) At least 48 hours, excluding Saturdays, Sundays and legal holidays, but not more than 30 days before commencing excavation activities, each person required to give notice of excavation activities shall notify the system referred to in section 7002 of this title. . . .

30 V.S.A. § 7004(a)-(b).

[2] In pertinent part, 30 V.S.A. § 7006 requires that a company notified of excavation activities "shall, within 48 hours, exclusive of Saturdays, Sundays and legal holidays, of the receipt of the notice, mark the approximate location of its underground utility facilities in the area of the proposed excavation activities."

in 30 V.S.A. § 7008(b)-(c) for its failure to mark its underground facilities as required by 30 V.S.A. § 7006.[3]

Sprint and GMP filed cross-motions for summary judgment. The Public Service Board issued its final order on February 23, 2000. The Board denied GMP's motion that it impose a penalty on Sprint finding that there was not an actual failure to fulfill its statutory requirements. The Board reasoned that since the 48 hours had not yet run, Sprint did not violate § 7008(c), regardless of whether they would have been able to mark the site within that period. The Board also held that GMP had violated 30 V.S.A. § 7004 by initiating the excavation before the 48-hour waiting period required by the statute, and therefore imposed a civil penalty of $1,000 on GMP, as provided for in 30 V.S.A. § 7008(a).

The Board also found that § 7008(a) did not create an independent basis of liability for damages, nor establish a per se rule of strict liability, and held that, under common law negligence, GMP was not liable for the damages. The Board found that GMP had successfully shown that the accident would have occurred even if the excavator had waited until the 48-hour period had run out, and that therefore GMP's failure to wait was not the proximate cause of Sprint's injury. The Board concluded that even if GMP's failure was a proximate cause, Sprint's failure was at least as great as GMP's, which would preclude recovery by Sprint under Vermont's comparative negligence law. Sprint appeals the Board's decisions regarding GMP's liability.

On appeal, Sprint contends that 30 V.S.A. § 7008(a) imposes strict liability for money damages where an excavator does not comply with the procedures set out in the statute. Sprint argues that GMP's failure to comply with the 48-hour waiting period as required by § 7004 resulted in damages to Sprint's fiber optic cable, and therefore GMP is strictly liable for those damages.

## I

We begin by observing that both parties and the Board assumed that the statutory scheme pursuant to which GMP's request for a

---

[3] Section 7008(c) reads:

> (c) If underground facilities are damaged because a company has not marked them as required by section 7006 or 7006a, the company shall be subject to a civil penalty as provided in subsection (b) of this section and, in addition, shall be liable for any damages incurred by the excavator as a result of the company's failure to mark the facilities.

30 V.S.A. § 7008(c). The civil penalty in subsection (b) is $1,000. Id. § 7008(b).

declaratory judgment was filed provides the Board with the jurisdiction to determine liability for damages based on common law theories of negligence. Sprint's motion for summary judgment claimed 30 V.S.A. § 7008 was evidence of "an unambiguous legislative intent to vest all aspects of underground utility excavation regulation, including the award of damages, in the Public Service Board and not the courts." GMP did not contest the Board's jurisdiction to act on Sprint's motion with respect to the issue of liability between Sprint and GMP, but argued that sufficient material facts were in dispute to make an award of summary judgment to Sprint inappropriate. The Board asserted that "[t]he statute that controls here, 30 V.S.A. § 7008, clearly vests the Board with jurisdiction to decide this matter, including *the determination of liability for the damage* to Sprint's cable, *determination of the amount of damages to be paid by the party found to be liable for that damage,* and the imposition of civil penalties." (Emphasis added.)

Ordinarily, public service boards and commissions do not have the authority to rule on claims for damages alleged to have been caused by negligence or breach of contractual obligations on the part of corporations subject to their supervision. See *Trybulski v. Bellows Falls Hydro-Electric Corp.,* 112 Vt. 1, 9, 20 A.2d 117, 121 (1941). The Public Service Board "is a body exercising special and statutory powers not according to the course of the common law, as to which nothing will be presumed in favor of its jurisdiction." *Id.* at 7, 20 A.2d at 120. The Board "has only such powers as are expressly conferred upon it by the Legislature, together with such incidental powers expressly granted or necessarily implied as are necessary to the full exercise of those granted." *Id.*

The provision of the Underground Utility Damage Prevention System statute most directly relied upon by the parties and the Board to address the claim of negligence is 30 V.S.A. § 7008(a):

> Any person who violates any provisions of sections 7004, 7006a, 7006b or 7007 of this title shall be subject to a civil penalty of up to $1,000.00, in addition to any other remedies or penalties provided by law or any liability for actual damages.

Both parties agree that § 7008(a) authorizes the Board to impose a civil penalty of up to $1,000. The conflict in the interpretation of the statute arises from the phrase "in addition to any other remedies or penalties provided by law or any liability for actual damages."

Sprint argues that the phrase sets forth two additional consequences which the violator may face in addition to the civil penalty: 1) any other remedies or penalties provided by law; or 2) any liability for actual damages. For Sprint, the use of the word "or" signifies a legislative intention to create a separate category that imposes strict liability without regard to civil negligence standards. Sprint claims that reading the statute as merely imposing a civil penalty would render some words superfluous and therefore such reading is contrary to basic rules of statutory interpretation. Sprint contends that, if there is no statutory assignment of liability, the phrase "in addition to any other remedies or penalties provided by law" in subsection (a) should be sufficient to describe the possible additional legal consequences of the accident to which the excavator is exposed, rendering meaningless the words "or any liability for actual damages." In addition, Sprint asserts that this reading is more consistent with the overall preventive goals of the statute, because the maximum penalty of $1,000 is "minuscule" given the nature of the entities involved, unless it is accompanied by some other consequence over and above application of general tort law to the violator.

GMP counters that the contested phrase in § 7008(a) simply makes clear that the civil penalty is not negated by other potential remedies, penalties or liabilities. GMP, however, does not take issue with the Board's authority to determine the issue of negligence in assessing the respective liabilities of the parties pursuant to § 7008(a).[4]

Contrary to Sprint's contention, GMP's reading of the statute does not render part of it superfluous. Since the excavator can be penalized regardless of whether an accident takes place, the sentence can be interpreted as imposing a penalty "in addition to any other remedies or penalties provided by law [for violating this statute or some other ordinance regulating excavation procedures] or any liability for actual damages [if damages do in fact occur]." The language of the statute is, therefore, ambiguous, and both parties' interpretations of the statute are plausible.

When interpreting a statute, our principal objective is to implement the legislative intent. *State v. Read,* 165 Vt. 141, 147, 680 A.2d 944, 948 (1996). If, as in this case, the language is unclear and ambiguous, legislative history may be used to determine the intent of the Legislature. *In re Margaret Susan P.,* 169 Vt. 252, 262, 733 A.2d 38, 46

---

[4] Presumably, GMP's reluctance at oral argument to address questions relating to ambiguity within § 7008(a) stemmed from its interest in protecting a Board determination favorable to GMP on the issue of negligence.

(1999). We may also look at the legislative policy that it was designed to implement. *Perry v. Medical Practice Board,* 169 Vt. 399, 406, 737 A.2d 900, 905 (1999).

## II .

The Underground Utility Damage Prevention System statute was enacted, in part, as a response to the concern of utility companies regarding the increasing number of excavation accidents in which underground utilities were affected. These incidents were causing major interruptions in services such as gas, electricity, telephone, and cable television; some of the accidents posed a serious danger to excavators and to the public as well.

The main purpose of the bill (H.28), as introduced, was "to prevent damage to underground utility facilities and to establish a procedure for when damage does occur." H.28. (1987 Vt., Bien. Sess.). At the time the bill was introduced, Vermont was one of the few states that did not have an underground utility protection bill in place. Some of the utility companies had joined the "dig safe" system; however, participation was voluntary so neither excavators nor utility companies could rely on it.

The Legislature held several hearings regarding H.28. All the major utility companies supported the bill. See, e.g., *Underground Utility Damage Prevention System: Hearings on H.28 Before the House Commerce Comm.,* (January 29, 1987, Vt. Bien. Sess. p. 43) (Statement of Theresa Feeley); see also audio recording: Hearing on H.28 Before the Senate General Affairs Comm., April 16, 1987. According to representatives of the utilities, the primary benefit expected from the "dig safe" statute was the prevention of accidents, not the imposition of liability on excavators. *Hearing, supra,* at 51-52 (Statement of Bert Cichetti). To that effect, utilities were ready to assume the burdens of maintaining the "dig safe" system, as long as contractors were required to give notice every time they planned to excavate. *Id.* at 55. Significantly, several representatives of utility companies testified that the recovery of damages was not the expected outcome of the statute, from the utility companies' point of view, as repair costs are often minimal. See audio recording, *supra.* More important was the disruption caused by accidents, which can also result in serious injury or death. *Id.* Their primary concern was thus to prevent them in the first place. *Id.*

Discussions in the record indicate that legislators, utility companies' lobbyists and contractors all interpreted § 7008(a) as im-

posing a civil penalty on the excavator for failure to use the "dig safe" system, regardless of whether an accident actually occurred. They did not consider the statute to exclude other litigation under the usual rules of negligence. Indeed, the sponsor of the bill explained that if damage did occur, "that would be up to the court system." *Hearing, supra,* at 11 (Statement of Rep. Van Zandt). Comments on the record also suggest that the statute would prevent litigation through the prevention of accidents. Nothing in the record suggests that the statute was intended to empower the Public Service Board to supplant or supplement resort to the courts under traditional theories of negligence. See audio recording, *supra.* Further, some suggestions during the hearings to enact a simple statute imposing liability were rejected, because punishing violators only after an accident occurs would defeat the preventive goals of the statute. *Hearing, supra,* at 67; see also audio recording, *supra.*

Additional evidence that the Legislature intended the phrase "in addition to any other remedies or penalties provided by law or any liability for actual damages" in § 7008(a) to be construed to refer to the availability of existing remedies or penalties rather than to authorize the Board jurisdiction to determine issues of negligence may be found in the record of the hearings. The record demonstrates that where the Legislature intended to impose strict liability under § 7008, it chose different language. Thus, an additional incentive to encourage excavators to rely on the "dig safe" system, § 7008(c) provides that where a company has not marked its underground facilities pursuant to the requirements of the statute, the company, in addition to its liability for a civil penalty, "shall be liable for any damages incurred by the excavator as a result of the company's failure to mark the facilities." The companies were ready to assume this liability based on their belief that freeing excavators from liability under § 7008(c) would promote the excavators' use of the system. *Hearing, supra,* at 55; see also audio recording, *supra.*

Although the bill underwent substantial changes between its original introduction and its enactment, the section regarding penalties remained unchanged. In addition, it is significant that two of the sections providing for more serious legal consequences if the excavator did not comply with the "dig safe" requirements were completely eliminated from the final version of the statute. One such section provided that lack of compliance with the statute "shall be prima facie evidence in any court or administrative proceeding that the damage was caused by negligence of the excavator." H.28, § 7011 (1987 Vt.,

Bien. Sess.). The other section gave jurisdiction to the Board to issue injunctions or temporary restraining orders to prevent unsafe excavations. *Id.* § 7013. Their elimination from the final bill suggests certain restraint regarding the extent of legal consequences for violations as well as the scope of jurisdiction granted to the Board.

The language of 30 V.S.A. § 7008(a) does not expressly confer upon the Vermont Public Service Board the authority to determine liability for actual damages caused by a person in violation of the applicable provisions of the Underground Utility Damage Prevention System. Moreover, in light of the extensive legislative history evincing a legislative intent not to grant such authority, the Board's exercise of jurisdiction can be neither presumed nor implied.

The Board's order of February 23, 2000 is reversed, except as to the imposition of a $1,000 penalty on Green Mountain Power Corporation for failure to give the requisite 48-hours notice before commencing excavation.

*Reversed.*