NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 46

No. 2016-387

| | |
|---|---|
| North Country Sportsman's Club | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Town of Williston | February Term, 2017 |

Helen M. Toor, J. (summary judgment motions); Robert A. Mello, J. (final judgment)

Hans G. Huessy of Murphy Sullivan Kronk, Burlington, for Plaintiff-Appellant.

Paul S. Gillies of Tarrant, Gillies & Richardson, Montpelier, for Defendant-Appellee.


PRESENT: Reiber, C.J., Robinson, J., and Cohen, Carroll and Hayes, Supr. JJ.,
Specially Assigned


¶ 1. **ROBINSON, J.** This appeal tests the limits of a town's authority to enforce a noise ordinance against a sport shooting range's historically established operations. Plaintiff North Country Sportsman's Club challenges citations issued by defendant Town of Williston to the Club for allegedly violating the Town's noise ordinance. The Club seeks a declaration that under state law as well as its own ordinance the Town lacks authority to enforce its noise ordinance against the Club for engaging in sport shooting that is consistent with its historical usage. It asks that we reverse the lower court's summary judgment declaration to the contrary. We agree with the Club and reverse in part and affirm in part.

¶ 2.     The relevant facts were not disputed in the parties' summary judgment briefing. The Club is a nonprofit corporation that has operated a skeet shooting range in Williston for approximately fifty years. There has been no recent increase in the Club's historical hours of operation or the amount or quality of noise historically generated at the range.

¶ 3.     The Town adopted a Noise Control Ordinance in 2004, barring excessive or unreasonably loud noise that disturbs the peace of the neighbors. Section 4 of the Ordinance states:

> No person or persons shall make, cause to be made, assist in making or continue any excessive, unnecessary, unreasonably loud noise or disturbance, which disturbs, destroys, or endangers the comfort, health, peace, or safety of others within the immediate vicinity of the noise or disturbance.

That section also lists specific kinds of prohibited disturbances. Section 5 includes decibel limits for noise created on non-residential properties, along with permitted time frames for such noise. Section 6.13 of the Ordinance includes the following exemption from the prohibitions of the ordinance:

> The use of firearms . . . when used for sport shooting consistent with any permitting conditions placed on such use. For sport shooting uses permitted prior to January 1, 2005, the hours of operation will be determined through a written agreement with the Town.

In May 2007, the parties entered into an agreement identifying the Club's hours of operation. This agreement contained a one-year term that automatically renewed absent written notice from one of the parties. In their agreement, the parties established that the hours of operation for the shooting range would be Wednesdays from 4:00 p.m. to dusk, Sundays from 9:00 a.m. to 4:00 p.m., and Saturdays for special events only. The agreement did not define what constituted a "special event" or place limits on the number of such events, but it limited the Saturday special event exemption to the hours of 9:00 a.m. to 4:00 p.m. and required the Club to give the town at least forty-eight hours' notice of a special event.

2

¶ 4.     In 2014, the Town wrote the Club asking to renegotiate the agreement to specifically define the term "special events" and limit them to five or six events per year. The Town acknowledged that this limitation would result in a reduction of such events from a historical average of twelve per year and suggested that, if the Club declined the proposed changes, it might attempt to limit special events to one or two per year. The Club responded that it would not agree to any terms that restricted or had the potential to restrict shooting activities to levels below historical operating levels. It subsequently proposed a new agreement that would have substantially increased the Club's hours of operations. On April 7, 2015, the Club notified the Town of its intent to terminate the parties' agreement on May 1, 2015 if the parties failed to reach a resolution. The parties did not successfully negotiate a new agreement and their longstanding agreement terminated on May 1, 2015.

¶ 5.     On May 6 and again on May 10, the Town cited the Club for violating the Ordinance. The Town claimed that absent an agreement, the Club's shooting range no longer qualified for an exemption under Section 6.13 of the Ordinance and thus violated Section 4 of the Ordinance, which prohibits excessive, unnecessary, or unreasonably loud noise. The Club had not changed the operating hours of the shooting range after the parties terminated the agreement, and the times of the alleged violations were consistent with the shooting range's historical operating hours. The Club pled innocent to both violations, which are currently pending before the Judicial Bureau.

¶ 6.     In June 2015, the Club filed a complaint, relying heavily on a state statute limiting municipal authority to regulate sport shooting, and seeking, among other things, a declaratory judgment establishing that (1) as long as the Club's operations are consistent with its historical practices, the Town does not have the authority to prohibit, reduce, or limit discharge at the range; (2) the Town's requirement that the Club enter into an agreement with the Town as to the range's hours of operations is outside the scope of the Town's authority; and (3) as long as its operations are consistent with the Club's historical patterns of shooting at the range, the Town may not cite

3

the Club for violating the Town's noise ordinance.[1]  The Town filed a counterclaim requesting a declaratory judgment on the issues raised by the Club's complaint, without specifying any particular declaration that it sought.

¶ 7.     The Club sought summary judgment in connection with its declaratory judgment claims.  The Town filed a cross-motion for summary judgment arguing that the Town merely sought to prevent the Club from increasing its hours of operation beyond historic levels, and was not demanding greater restrictions on the Club as a condition of amending the agreement.  The Town asked the court to order the parties to mediate and did not articulate any particular declaration it sought in connection with its cross-motion.

¶ 8.     The trial court held that the Town (1) has no authority to limit the Club's hours of operation below the 2005 level; (2) may not demand a written agreement as to the hours of operation; and (3) may issue citations for violations of the noise ordinance.  The trial court reasoned that a state statute prohibiting municipalities from prohibiting, reducing, or limiting discharge at existing sport shooting ranges prohibited the Town from directly regulating the Club's hours of operation, but did not prohibit the Town from enforcing its noise ordinance against the Club.  The court distinguished limiting "discharge" at sport shooting ranges from limiting the noise generated by those ranges, and concluded that the restrictions on municipal authority to regulate "discharge" did not also limit municipal authority to regulate noise caused by the discharge of firearms.  The court surmised that the Club could use silencers or enclosures with soundproofing to reduce the noise generated by the shooting without reducing the amount of shooting taking place at the range. On request for reconsideration, the court concluded that its statutory construction was sound

---

[1]  The Club's complaint also alleged civil rights violations and malicious prosecution and sought damages in connection with these claims.  The Club did not pursue these claims in connection with the parties' summary judgment motions and then stipulated to entry of a final judgment following the trial court's ruling on the declaratory judgment count.  The Club does not raise these issues on appeal or request a remand for the purpose of further litigating them. Accordingly, we limit our review to the Club's request for a declaratory judgment.

4

regardless of whether its speculation as to possible means of limiting noise was well founded. The Club appealed.

¶ 9.    We review a motion for summary judgment without deference using the same standard as the trial court. In re All Metals Recycling Inc., 2014 VT 101, ¶ 6, 197 Vt. 481, 107 A.3d 895. "[S]ummary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Bacon v. Lascelles, 165 Vt. 214, 218, 678 A.2d 902, 905 (1996) (citation omitted); V.R.C.P. 56(a).

¶ 10.    We conclude that the Legislature has specifically restricted municipal authority to prohibit, reduce, or limit discharge at any sport shooting range in existence as of May 2006, that this restriction limits the Town's authority to enforce its noise ordinance to reduce or limit discharge at the Club below historical levels, and that the Town cannot compel the Club to enter into an agreement as to the parameters of the historically established levels of shooting at the Club, but the absence of an agreement does not serve as a defense to the Club in an enforcement action.

¶ 11.    The Legislature has provided that towns, cities, and incorporated villages have the authority to "regulate or prohibit the use or discharge" of firearms as long as any ordinance to that effect does not "prohibit, reduce, or limit discharge at any existing sport shooting range" as defined by 10 V.S.A. § 5227. 24 V.S.A. § 2291(8). The Legislature long ago delegated to towns the authority to regulate or prohibit the use of firearms, but the restriction on that authority is relatively new, having taken effect on May 22, 2006. See 2005, No. 173 (Adj. Sess.), § 3. The parties agree that the shooting range in this case fits within the definition of an existing sport shooting range.

¶ 12.    This statute unquestionably limits the Town's authority to reduce the permissible use or discharge of firearms at the Club below the levels in effect on May 22, 2006.[2] While

_____

[2] The level of discharge at the Club on the effective date of the statute establishes the baseline existing use against which municipal regulations are measured. Accordingly, references in this opinion to "historical" levels of shooting at the Club refer to those levels established as of May 22, 2006.

5

municipalities are entitled to create their own regulatory ordinances, those ordinances must conform to statutory standards. In re White, 155 Vt. 612, 618, 587 A.2d 928, 931 (1990). If an ordinance does not properly comply with or effectuate a statute, that ordinance should be read to "include and effectuate" the statute. Id. at 619, 587 A.2d at 932. Municipal ordinances are subordinate to the laws and statutes of the state. See Obolensky v. Trombley, 2015 VT 34, ¶ 35, 198 Vt. 401, 115 A.3d 1016. The Town's noise ordinance is thus subordinate to 24 V.S.A. § 2291(8) and must be enforced in a way that complies with that statute. That means the Town may not require the Club to reduce firearms discharge below the levels established as of May 2006.

¶ 13. We conclude that this statute prohibits the Town from enforcing its noise ordinance with respect to noise generated by discharge of firearms that is consistent the Club's established amount of shooting as of May 22, 2006. We base this conclusion on our understanding of the Legislature's intent as discerned from the language of the statute as well as the history surrounding the 2006 amendment. See State v. Thompson, 174 Vt. 172, 174, 807 A.2d 454, 459 ("When construing a statute, our paramount goal is to effectuate the intent of the Legislature.").

¶ 14. The plain language of § 2291(8) supports the view that the Town cannot enforce its noise ordinance in a way that limits the Club's ability to maintain its historical levels of shooting at the Club. In determining legislative intent, "we look first at the plain meaning of statutory language." Id. The statute here authorizes municipal regulation of the discharge of firearms within the municipality provided that regulation does not reduce or limit discharge at any existing sport shooting range. 24 V.S.A. § 2291(8). Enforcing the Town's noise ordinance against shooting consistent with historical uses would have the effect of reducing or limiting firearms discharge at existing sport shooting ranges.

¶ 15. Even if we concluded that the language on its face was ambiguous, the history surrounding the 2006 amendment would reinforce our construction. See Green Mountain Power Corp. v. Sprint Commc'ns, 172 Vt. 416, 420-21, 779 A.2d 687, 691 (2001) (explaining that where

6

language is unclear, legislative history and legislative policy the statute was designed to implement can illuminate intent of Legislature). The restriction on municipal authority to limit discharge at sport shooting ranges was enacted in 2006 as part of a broader package of statutory amendments that limited the potential civil liability of sport shooting ranges for nuisance claims. See 2005, No. 173 (Adj. Sess.), § 3. The law amended 10 V.S.A. § 5227 to provide that only a property owner with land abutting a sport shooting range may bring a nuisance claim against the range and to create a rebuttable presumption that the range is not a nuisance if it was established prior to the acquisition of the abutting property and the frequency of the shooting or other alleged nuisance activity at the range has not significantly increased since that acquisition. 2005, No. 173 (Adj. Sess.), § 1. The amended statute established that to rebut the presumption, the abutting property owner must show that the activity has "a noxious and significant interference with the use and enjoyment of the abutting property." Id.

¶ 16. Four aspects of the history surrounding this enactment support our statutory analysis. First, the statute left in place two provisions relating to municipal authority regarding sport shooting ranges. One provides that use of a sport shooting range that substantially complies with any noise conditions of any issued municipal or state land use permit otherwise required by law cannot be subject to civil liability for damages or any injunctive relief resulting from noise or noise pollution. 10 V.S.A. § 5227(b). The second provides, "If no municipal or State land use permit is otherwise required by law, then the owner or operator of the range and any person lawfully using the range shall not be subject to any civil liability for damages or any injunctive relief relating to noise or noise pollution." Id. § 5227(c). Significantly, although the Legislature maintained language suggesting that sport shooting ranges might be subject to noise conditions in required permits, the statute, both before and after amendment, recognized that not all sport shooting ranges are subject to permit conditions relating to noise. Yet the statute did not expressly contemplate that sport shooting would be subject to municipal noise ordinances and said nothing about the effect of

compliance or noncompliance with such ordinances on the potential civil liability of a shooting range. Moreover, the express reference to noise pollution in the statute, and the focus on sport shooting ranges' potential civil liability to abutting neighbors for nuisance, belies the trial court's view that the regulatory scheme was concerned only with the discharge of firearms, and not necessarily with the noise created by the discharge.

¶ 17.    Second, although the primary focus of the 2006 amendment was limiting the liability faced by sport shooting ranges against civil claims of nuisance, the limitation was structured to provide leeway to sport shooting ranges to maintain historical levels of use but not necessarily to increase levels of shooting. This is consistent with our understanding that the amendment to § 2291(8) was designed to likewise limit municipal regulatory authority to protect existing levels of use but not to protect increased levels of shooting.

¶ 18.    Third, the bill as originally introduced specifically limited nuisance actions "for noise or noise pollution" against the owners of sport shooting ranges. H.447, 2005-2006 Gen. Assem., Bien. Sess. (Vt. 2006). The final language of the 2006 amendment was broader, applying to nuisance claims generally. See 2005, No. 173 (Adj. Sess.), § 1. But the focus on the noise generated by sport shooting ranges in the initial bill belies the argument that, in passing the 2006 amendment, the Legislature was not concerned about the noise impacts of shooting ranges.

¶ 19.    Finally, we note that the legislation enacted in 2006 was proposed, considered, and passed while a high-profile court case involving Act 250 jurisdiction over a shooting club, and the competing interests of the club and abutting neighbors, ran its course. One of the concerns in that case was the alleged increase in noise impacts resulting from an increase in shooting at the range. See In re Hale Mountain Fish & Game Club, Inc., 2007 VT 102, ¶ 7, 182 Vt. 606, 939 A.2d 498. This history further undermines the suggestion that in amending the statute to limit municipal authority to regulate the discharge of firearms at shooting ranges, the Legislature did not intend to impact municipal authority to regulate the noise resulting from those impacts.

8

¶ 20.    From this history, we conclude that one purpose of the 2006 amendment was to prohibit municipalities from regulating the discharge of firearms, including regulation of the noise created by such discharge, in a way that limits or reduces the permissible amount of shooting below those levels established as of May 22, 2006.

¶ 21.    This conclusion answers two of the Club's requests for declaratory relief.  First, we affirm the trial court's declaration that the Town does not have the authority to prohibit, reduce, or limit discharge at the range that is within the Club's historical use.  Second, we reverse the trial court with respect to the impact of this limitation on the case at hand and conclude that, as long as the Club's operations are consistent with its historical operation of the range, using the May 22, 2006 baseline, the Town may not cite the Club for violating the Town's noise ordinance.[3]  Any effort to do so would exceed the Town's authority under the state statute.

¶ 22.    With respect to the final issue—the Town's authority to require the Club to enter into an agreement as to its hours of operation—we find no support for the claim that the Town can compel the Club to enter into such an agreement.  The municipal ordinance contemplates that sport shooting uses permitted prior to January 1, 2005 may be exempt from enforcement of municipal noise ordinances during the hours of operation established in a written agreement with the Town. But it does not give the Town authority to compel negotiation, mediation, or agreement as to hours. As a practical matter, it is difficult to imagine how the Town could compel a private party to enter into a voluntary agreement.

¶ 23.    However, the absence of an agreement as to the Club's hours of operation does not preclude the Town from enforcing its noise ordinance within its statutory authority—that is, as it

_____

[3]  Although the parties do not appear to dispute that their May 2007 agreement reflected the existing levels of use, we find no specific and unopposed statement of material fact establishing that fact.  The parties have sought from the Court a determination of the nature of the Town's authority, and not a determination of the specific dates and times of operation that are exempt from municipal regulation.  We limit our decision accordingly.

applies to the noise from shooting exceeding historically established levels. The Town's ordinance prohibits unreasonable noise. Noise from sport shooting like the Club's that was permitted prior to January 1, 2005 may be exempt from the noise ordinance if conducted within the hours of operation reflected in a written agreement with the Town. But in the absence of such an agreement, no exemption would apply. So, if the Club increases the extent of its shooting beyond its historical footprint, and if that increased noise falls within the prohibitions in the Town's noise ordinance, the Town could bring an enforcement action with respect to such use.[4]

Affirmed in part, reversed in part. The Court enters the following declaratory judgment. The Town does not have the authority to prohibit, reduce, or limit firearms discharge at the range that is within the Club's historical use. As long as the Club's operations are consistent with its historical operation of the range, using the May 22, 2006 baseline, the Town may not cite the Club for violating the Town's noise ordinance. The Town may attempt to apply its noise ordinance to shooting at the range that exceeds the Club's historical use unless the activity is exempt pursuant to an agreement voluntarily executed between the Town and Club as to its hours of operation.

FOR THE COURT:

_____

Associate Justice

---

[4] For this reason, both sides would benefit from an agreement establishing their mutual understanding as to the historic levels of shooting at the Club circa May 2006. In the absence of a more specific agreement, especially with regard to the frequency and duration of "special events" on Saturday, both sides face uncertainty. The Club is vulnerable to enforcement actions by the Town and claims by the Town that its use exceeds historically established levels. The Town is vulnerable to the Club increasing its use under the guise of maintaining historic levels.