Filed 03/04/24

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| MONGEON BAY PROPERTIES, LLC,<br> Plaintiff<br><br>v.<br><br>TOWN OF COLCHESTER,<br> Defendant | Docket No. 22-CV-510 |

RULING ON MONGEON BAY PROPERTIES' MOTION FOR SUMMARY JUDGMENT

This is a condemnation action under Title 24, chapters 97 and 101. The Town of Colchester seeks to condemn land owned by Mongeon Bay Properties, LLC to build a stormwater treatment facility. Mongeon challenges the proposed taking as illegal, unnecessary, and not for the public good or a public purpose. Mongeon now moves for summary judgment.

Undisputed Facts

The following facts are undisputed for purposes of the motion for summary judgment. Mongeon owns property located at 885 East Lakeshore Drive in Colchester, located along the shores of Mallett's Bay of Lake Champlain and in Colchester's "R2" zoning district. The land has a small flat area that then slopes steeply down toward the lake. The land sits at the "toe" of an 11.2 acre drainage area designated as "MB-09." Currently, all of that drainage area flows toward a drainpipe that runs under Mongeon's property.

The Town holds a perpetual easement across the property pursuant to a 1979 quitclaim deed that grants it the right to install, maintain, repair, and replace a drainpipe

and catch basin for the drainage of surface water. The easement also allows the Town to locate a discharge pipe through the beach portion of the property for the drainage of surface waters to Lake Champlain. The easement further requires the Town to promptly maintain and repair the drainpipe, to prevent and repair any erosion to the property, to indemnify Mongeon for any damage or expense incurred by the Town's exercise of its easement rights and duties, and to repair all damage to Mongeon's premises caused by the Town's exercise of its rights or by water flowing through its drainpipes.

In October 2019, a large rain storm struck Chittenden County. The storm brought substantial rainfall that collected into the drainpipe under Mongeon's property. Mongeon's land and building suffered water damage from the storm. The parties dispute whether the drainpipe's condition caused the damage. Mongeon and the Town undertook a series of discussions about repairs to the property. The Town then installed a "cured-in-place" liner through the drainage pipe and a substantial amount of "fill" (a mix of mud and concrete) to replace the land that was lost. In July 2021, Mongeon sued the Town for breach of easement by damaging its property. *See* Docket No. 21-CV-1773. The parties settled that action in August 2022.

In August 2021, less than two months after the Town accepted service of Mongeon's lawsuit against it in 21-CV-1773, Mongeon received a notice of public hearing stating that the Town was initiating condemnation proceedings pursuant to 24 V.S.A. Ch. 77, § 2805 to condemn the property. The notice provided that the purpose of the proposed taking was for "maintenance and improvements to the stormwater drainage infrastructure and related improvements . . . ." Ex. 9. At that hearing, Mongeon objected to the use of 24 V.S.A. § 2805 to effectuate this taking, and argued that Title 24, Chapters 97 and 101 governed the request to take land for the construction of stormwater treatment

practices. After Mongeon filed this action challenging the Town's taking, the parties resolved their dispute over the proper statutory procedure. Under that stipulation, they agreed that this case would follow the procedures set forth under Title 24, Chapters 97 and 101.

Pursuant to 24 V.S.A. § 3604, the Town filed a necessity petition on November 14, 2022. The Petition

> proposes taking land for the purpose of constructing, maintaining, operating, and repairing a stormwater treatment facility to replace an existing 24" stormwater outflow located at 885 East Lakeshore Drive. The outfall is one of the largest on East Lakeshore Drive and discharges 3.7 million gallons of untreated stormwater into Malletts Bay annually. The proposed stormwater treatment facility will provide three levels of treatment prior to stormwater discharge into Malletts Bay. The Town cannot construct or operate the stormwater treatment facility without taking the entire parcel and removing the existing building at 885 East Lakeshore Drive.

Pet'n for Hearing to Determine Necessity at 1 (Nov. 14, 2022). The Petition relies on an October 26, 2021 survey, "Stormwater Improvements 885 East Lakeshore Drive — Proposed Taking Limits," by Donald L. Hamlin Consulting Engineers, Inc. Ex. 1. The parcel of land that the Town seeks to take in fee-simple is .11 acres or 4,791.6 square feet. *See* id. Before the court scheduled a necessity hearing, Mongeon moved for summary judgment.

Discussion

Under Chapters 97 and 101 of Title 24, a municipal corporation may "construct, maintain, operate, and repair" a "sewage system" and a "sewage disposal plant and system," and may "take, purchase, and acquire . . . real estate and easements necessary for its purposes." 24 V.S.A. §§ 3502, 3602. A municipality may also enter any land to make surveys, and may lay and connect pipes and sewers "as may be necessary to convey sewage

3

for the purpose of disposing of sewage by such municipal corporation." Id. § 3602. "Necessity" means:

> a reasonable need that considers the greatest public good and the least inconvenience and expense to the condemning party and to the property owner. Necessity shall not be measured merely by expense or convenience to the condemning party. Due consideration shall be given to the adequacy of other property and locations; to the quantity, kind, and extent of property that may be taken or rendered unfit for use by the proposed taking; to the probable term of unfitness for use of the property; to the effect of construction upon scenic and recreational values, upon home and homestead rights and the convenience of the owner of the land; to the effect upon town grand list and revenues.

24 V.S.A. § 3601(1). "Sewage" is the "used water supply of a community, including such groundwater, surface, and stormwater as may or may not be mixed with these liquid wastes from the community." Id. § 3501(5).

Where a municipality and landowners do not agree to convey the interest in land, "the board shall petition a Superior judge, setting forth therein that such board proposes to take certain land, or rights therein, and describing such lands or rights, and the survey shall be annexed to said petition and made a part thereof." 24 V.S.A. § 3604.[1] The petition must also state the purposes for which the proposed taking is sought. Id. The court shall then set a hearing to determine whether the taking is necessary. Id. § 3605. At the hearing, the board has the burden to prove necessity, and the court must "determine whether necessity requires the taking of such land and rights and may modify or alter the proposed taking in such respects as to it may seem proper." Id. § 3607. As noted above, the Town filed a necessity petition on November 14, 2022 that relies on an October 26, 2021 survey by Donald Hamlin.

---

[1] "Board" means a municipality's board of sewage disposal commissioners. 24 V.S.A. § 3601(2).

4

Mongeon contends that the Town's proposed taking of land is illegal because it is impossible to conclude that it is necessary and for the public good. Specifically, it argues that the taking would result in a subdivision that is smaller than the minimum lot size and that the proposed stormwater treatment structure would not meet the Town's setback requirements. *See* Ex. 8, Colchester Development Regulations, p. 234, Table A2 (providing for 15,000 square foot minimum lot size and 15 foot side yard setback in R2 zoning district).[2] Thus, Mongeon asserts, the taking would create a nonconforming lot that cannot be approved under the Town's Development Regulations. The Town contends that condemnation actions are not subject to zoning regulations, and therefore Vermont zoning law does not preclude a necessity finding here.

"Necessity," in this statutory scheme, means "a reasonable need that considers the greatest public good and the least inconvenience and expense to the condemning party and to the property owner." 24 V.S.A. § 3601(1). Mongeon asserts that if a proposed taking would create a zoning nonconformity, then it is not for the public good and therefore not necessary. *See* Mongeon's Reply at 6. Mongeon's argument fails based on the plain language of the statute. That statute does not require that the proposed taking be free of all possible zoning violations or even that it must be in the public good in all respects. Instead, it speaks of "a reasonable need that *considers* the greatest public good and the least inconvenience and expense . . . ." 24 V.S.A. § 3601(1) (emphasis added). The statute then goes on to list a number of facts to which the court must give "due consideration." To the extent a proposed taking will create a zoning nonconformity, the court might have

---

[2] The alleged setback violation is based on a July 19, 2021 "Stormwater Outfall Improvements Schematic" prepared by Hamlin. Ex. 7. It is unclear, however, whether the Town plans to build the exact stormwater system depicted in that schematic. The Town did not rely on the schematic in its necessity petition, and even Plaintiff admits that it is "merely a conceptual sketch." Mongeon's Stmt. of Facts ¶ 38.

to consider that and weigh it against the other necessity factors. But nowhere does the statute suggest that any such nonconformity will necessarily doom the condemnation.

Moreover, Vermont statute explicitly limits the scope of municipal bylaws. "State- or community-owned and -operated institutions and facilities" may be regulated "only to the extent that regulations do not have the effect of interfering with the intended functional use." 24 V.S.A. § 4413(a)(1)(A). Thus, Colchester's minimum lot size and setback requirements would be ineffective to the extent that they interfere with the Town's proposed use of the property to construct a stormwater treatment facility. Mongeon's contention that the Town somehow waived § 4413 by narrowing the definition of "community-owned [] facilities" in its regulations, *see* Mot. for Summ. J. at 13; Reply at 10–11, is unfounded for the reasons expressed in the Town's memorandum. Town's Opp'n at 30–33. "Municipal ordinances are subordinate to the laws and statutes of the state." N. Country Sportsman's Club v. Town of Williston, 2017 VT 46, ¶ 12, 205 Vt. 1. Mongeon cites no authority for the idea that Town regulations can override a statute.

Moreover, Vermont case law supports the proposition that municipalities need not comply with their own zoning bylaws when performing governmental functions. In Kedroff v. Town of Springfield, the Supreme Court permitted a municipality to build a sewage disposal plant in a residentially-zoned district. 127 Vt. 624, 629 (1969). The Court reasoned that the construction of the sewage disposal plant was exempt from the local zoning ordinance because it was a "governmental function," and "a municipality is not

subject to zoning restrictions in the performance of its governmental, as distinguished from its corporate or proprietary activities." Id. at 629.[3]

Kedroff is consistent with authorities from other states. While courts have relied on various theories and tests to analyze this issue, *see generally* Annotation, Applicability of Zoning Regulations to Governmental Projects or Activities, 53 A.L.R.5th 1; 3 Am. Law. Zoning § 18:28–34 (5th ed.); Note, Governmental Immunity, 84 Harv. L. Rev. 869 (1971), the clear general trend of the caselaw is that municipalities need not comply with municipal zoning regulations when putting its property to a municipal use. *See*, *e.g.*, In re Condemnation of Certain Rts. in Land for Const. of a Cnty. Rd. by Allamakee Cnty., Iowa, 666 N.W.2d 137, 140 (Iowa 2003) ("there is an abundance of authority from other jurisdictions supporting the premise that the power of eminent domain is not limited by zoning regulations"); State ex rel. City of Gower v. Gee, 573 S.W.2d 107, 112 (Mo. Ct. App. 1978) (holding that under state statute authorizing municipalities to use eminent domain for purposes of sewage disposal within municipality or within five miles of its corporate limits, municipality need not comply with adjoining county's zoning regulations); Witzel

---

[3] At first blush, Kedroff might seem inconsistent with the line of cases holding that "the construction and repair of sewer systems are proprietary functions" in the context of determining municipal sovereign immunity to tort liability. Lorman v. City of Rutland, 2018 VT 64, ¶ 9, 207 Vt. 598 (quotations omitted). Importantly, however, Kedroff did not arise in the tort context, and there is no rule that sewer systems must be considered "proprietary" in all contexts. See Dugan v. City of Burlington, 135 Vt. 303, 305 (1977) ("a certain object may, depending upon its use at a particular time and place, involve either a governmental or proprietary function"); *see also*, Note, Governmental Immunity from Local Zoning Ordinances, 84 Harv. L. Rev. 869, 870 (1971) ("In the zoning context such functions as sewage disposal, garbage disposal, and the operation of water supply facilities have been categorized as both governmental and proprietary in different jurisdictions. Indeed the same function may be classified differently even within a single jurisdiction."). The Kedroff Court explained that there was a "legislative mandate . . . relating to . . . water pollution control" that "embraces the State as a whole, and is not merely a local concern." Kedroff, 127 Vt. at 629. Because the construction of a sewage treatment plant reflected "an overall state policy and statutory authority for its accomplishment," it "must be stamped a governmental function." Id. The Kedroff Court was plainly cognizant of its prior treatment of water and sewer lines as "proprietary" functions in tort cases, *see* id. (citing Marshall v. Town of Brattleboro, 121 Vt. 417 (1960), which detailed anomalous results in tort cases involving injuries from municipal water systems), and opted to classify sewage systems differently for zoning purposes. Here, of course, the Town of Colchester has specific statutory authority to take the land for the purpose of building a sewage system. *See* 24 V.S.A. §§ 3502, 3602.

v. Vill. of Brainard, 302 N.W.2d 723, 725 (Neb. 1981) ("The general rule is that the propriety of a taking of property by eminent domain is not defeated by the fact that the purpose for which the property is taken is a use prohibited by the zoning regulations.") (quotation omitted); In re Condemnation by City of Coatesville, 64 Pa. D. & C.4th 231, 270–71 (Pa. Ct. Com. Pl. 2002), aff'd in part, rev'd in part sub nom. In re Condemnation of Certain Properties & Prop. Ints. for Use as Pub. Golf Course, 822 A.2d 846 (Pa. Commw. Ct. 2003) ("The zoning determination . . . is not a requisite of an effective taking by the authority.") (quotation omitted); City of Lubbock v. Austin, 628 S.W.2d 49, 50 (Tex. 1982) (city exercising its eminent domain authority is not bound by its own zoning ordinance unless the condemnation is unreasonable or arbitrary); *see also*, *generally*, 83 Am. Jur. 2d Zoning and Planning § 297 ("a municipality may carry out its governmental functions without regard to zoning restrictions"); 8 McQuillin Mun. Corp. § 25:14 (3d ed.) ("Eminent domain is an absolutely superior power which cannot be restricted by a zoning ordinance.").

Mongeon cites numerous Vermont cases that stand for the unremarkable propositions that orderly development is in the public good, and that nonconforming uses are disfavored. Mot. for Summ. J. at 8–11; Reply at 5. Those cases are not persuasive. They involve private developers rather than municipalities exercising a governmental function, and do not arise in the eminent domain context.

Mongeon also relies on 24 V.S.A. § 4446: "Within the jurisdiction of any municipality that has adopted any of the bylaws authorized by this chapter, no land development may be undertaken or effected except in conformance with those bylaws." It similarly relies on Colchester Development Regulation § 1.01(C): "No provision in any such ordinance, law, restriction, covenant, or undertaking shall be deemed to justify

8

noncompliance with any provision in this chapter." In light of <u>Kedroff</u> and the supporting authority from other states, these provisions do not aid Mongeon. *See* <u>Kedroff</u>, 127 Vt. at 629 (1969) ("the water pollution control statutes of this State may be regarded as an amendment to or repeal of a local zoning ordinance which is in conflict with the operation of those statutes").

Mongeon also points out that the legislature explicitly exempted the Agency of Transportation from subdivision reviews for its takings under 19 V.S.A. § 502: "The Agency's acquisition of property pursuant to this chapter, whether by condemnation or conveyance in lieu of condemnation, shall not require subdivision approval under any law, regulation, or municipal ordinance." Thus, Mongeon contends that the legislature knew how to exempt takings from zoning compliance and did not do so for sewage systems, and that the court must presume that the legislature acted intentionally. *See* <u>Daiello v. Town of Vernon</u>, 2022 VT 32, ¶ 38 ("[w]here the Legislature has demonstrated that it knows how to provide explicitly for the requested action," courts are "reluctant to imply such an action without legislative authority.") (quotation omitted). Mongeon's argument might carry some weight if not for <u>Kedroff</u>. Moreover, the sewage system condemnation statutes existed long before 19 V.S.A. § 502 was enacted in 1985, and the specific language exempting transportation takings from subdivision review was not added until 2019 as part of a larger legislative package addressing transportation. 2019, No. 59, § 23, eff. July 1, 2019 ("An act relating to the Transportation Program and miscellaneous changes to laws related to transportation."). The far more likely scenario is that the legislature never thought about adding a specific zoning exemption to the sewage taking statutes, rather than that they intentionally declined to do so.

9

Order

Mongeon's motion for summary judgment is denied. The clerk shall set this matter for a pretrial to discuss scheduling of the necessity hearing.

Electronically signed on March 4, 2024 pursuant to V.R.E.F. 9(d).

_____
Helen M. Toor
Superior Court Judge